**In re Alex HUBBARD, Jr., Debtor.**

**No. 98–07980–BGC–13.**

United States Bankruptcy Court,
N.D. Alabama,
Southern Division.

Aug. 16, 2000.

---

Alex Hubbard, Jr., Birmingham, AL, pro se.

Wendy Brooks Crew, Birmingham, AL, for Willie Mae Hubbard.

Sara Senesac, Birmingham, AL, for Phoenix Funding.

Marvin Franklin, Birmingham, AL, for TranSouth Financial Corporation.

David P. Rogers, Jr., Birmingham, AL, trustee.

## MEMORANDUM OPINION AND ORDER

BENJAMIN COHEN, Bankruptcy Judge.

### I. HOLDING

Because the debtor did not make all of his Chapter 13 plan payments timely, this case is dismissed.

### II. BACKGROUND

The debtor, his second former wife, and many of the other parties before this Court have been litigating for years over issues associated with real estate located at 2100 Fulton Avenue SW, Birmingham, Alabama. Both the debtor and his second former wife separately claim full ownership of that property. In her favor, Alabama state courts have awarded the property to her. In contrast, when the debtor filed the current Chapter 13 case only five months after losing the property at the state court trial level, he scheduled a "fee simple" interest in the property on his bankruptcy petition. And notwithstanding additional losses at the state court appellate level during this bankruptcy case, the debtor continues to maintain that position.

Related to this direct conflict, the mortgagee on the property wants to foreclose on the property, contending that no one is paying the mortgage note on the property. In addition, the mortgagee has filed a claim in this case for attorney fees associated with its litigation with the debtor over the property. Similarly, the attorney for the debtor's second former wife has filed a claim in this case for attorney fees (awarded by the state courts) for work performed in the couple's domestic litigation.

These disagreements have produced multiple state and federal court actions, many of which were unresolved when the debtor filed the pending Chapter 13 on December 8, 1998. This was unfortunate. Because of the intensity of the disputes and the participants' associated hostilities, those matters quickly became the dominat-

ing force in this case, and predictably were a negative influence.

As these events unfolded before this Court, the complexity of the issues and the bitterness among the parties convinced the Court that if the debtor did not demonstrate a total, unyielding commitment to resolving these matters within the context of this Chapter 13 case *by timely making all of his Chapter 13 plan payments*, that this case *should* be dismissed. In that regard, the Court seized every opportunity to convince the debtor that he must make all payments timely and that if he did not, his case would be dismissed. Because these suggestions and warnings failed, as did the debtor, the Court finds that this case *must* be dismissed.

## III. FINDINGS OF FACT

The are 11 interested parties before this Court. They are:

Mr. Alex Hubbard, Jr., the debtor.[1]

Ms. Shirley Ann Hubbard Ross, the debtor's first former wife.

Ms. Willie Mae Hubbard (Ms. Hubbard), the debtor's second former wife.

Ms. Wendy Brooks Crew (Ms. Crew), Ms. Willie Mae Hubbard's attorney in this case and the related state court domestic matters involving the debtor.

Mr. Brent Davis (Mr. Davis), the debtor's attorney when this case was filed, now withdrawn.

Mr. John Wiley (Mr. Wiley), the debtor's second attorney in this case, now withdrawn.

Phoenix Funding (Phoenix), the mortgagee on the Fulton Avenue property and a secured claimant in this case.

Ms. Sara Senesac (Ms. Senesac), the attorney for Phoenix Funding.

TranSouth Financial Corporation (TranSouth), another secured claimant in the current case.

Mr. Marvin Franklin (Mr. Franklin), the attorney for TranSouth Financial Corporation.

Mr. Charles King (Mr. King), the Assistant Chapter 13 Trustee.

### A. Background

On August 27, 1997, the debtor purchased real estate located at 2100 Fulton Avenue SW, Birmingham, Alabama. To secure that purchase the debtor executed a note and mortgage in favor of Phoenix Funding.

When Willie Mae Hubbard (the debtor's second wife) sued the debtor for divorce, both claimed the Fulton Avenue property. Ms. Hubbard claimed it because of their marriage. The debtor claimed it maintaining that there was no marriage.

In their domestic litigation, the debtor argued that a previous marriage to Ms. Shirley Ann Hubbard Ross had not been dissolved and thus he was never legally married to Willie Mae Hubbard. In its *Final Judgment of Divorce* entered on June 23, 1998, the state Circuit Court for the Tenth Judicial Circuit of Alabama, Jefferson County, Alabama, disagreed with the debtor and awarded the property to Ms. Hubbard. Paragraph 11 of that court's decree reads:

That the property of the parties located at 2100 Fulton Avenue S.W., Birmingham, Alabama is hereby awarded to the Plaintiff and the Defendant is divested of any right, title or interest therein. The defendant is hereby ordered, by and through his attorney of record, to prepare, execute and deliver to the Plaintiff a deed transferring all of his right, title and interest in and to the said property to the Plaintiff within thirty (30) days of the date of this Decree.

---

1. The debtor is not now represented by counsel. An attorney represented the debtor when this case was filed but later asked to withdraw. Without objection from the debtor, the Court allowed the withdrawal by order entered April 27, 1999. The debtor was again represented by an attorney in a later matter but that attorney also asked to withdraw. Again the debtor did not object and this Court allowed the withdrawal by order entered August 5, 1999.

*Final Judgment of Divorce,* entered by the state court on June 23, 1998, (now Exhibit A to *Objection to Confirmation of Plan,* filed on February 17, 1999, Proceeding No. 17 in this Court).[2]

 Without obtaining a stay of that order, the debtor filed an appeal to the Alabama Court of Civil Appeals.[3] The appellate court affirmed the trial court on May 7, 1999, and on July 16, 1999, overruled the debtor's *Application for Rehearing.*[4] Because the debtor did not appeal either ruling to the Supreme Court of Alabama within the time prescribed by Rule 4 of the Alabama Rules of Appellate Proce-

2. At a hearing before this Court on November 16, 1999, Ms. Crew, counsel for Ms. Hubbard, represented that Ms. Hubbard requested the state court to enforce its June 23 order to require the debtor "to prepare, execute and deliver to the Plaintiff a deed transferring all of his right, title and interest in and to ..." the Fulton Avenue property. Ms. Crew also represented that the state court denied that request and would not enforce its order because the debtor had listed the property in the pending bankruptcy. This Court has not been asked to allow the state court, (if such permission is even necessary), to enforce its order.

3. At the hearing before this Court on November 16, 1999, the debtor agreed that no stay of the state trial court's order was ever issued. At that same hearing, counsel for Ms. Hubbard represented that the debtor requested a stay but that his request was denied.

4. Some of the information supplied to this Court regarding the debtor's appeal or of the appellate court's ruling in favor of Ms. Hubbard was not all admissible evidence; however, the parties, including the debtor, agree that an appeal was filed and that the appellate court affirmed the trial court. Documents filed by the parties in this case confirm these events and the dates the events occurred.

5. The matters before this Court originated in, and are still driven by, the parties' state court domestic relations matters. This Court should proceed with caution when invading that jurisdiction. As the Court of Appeals for the Eleventh Circuit cautioned in *Carver v. Carver,* 954 F.2d 1573 (11th Cir.1992), *cert. denied,* 506 U.S. 986, 113 S.Ct. 496, 121 L.Ed.2d 434 (1992):

dure, he sought an extension of time from the Court of Civil Appeals to file an appeal. The Court of Civil Appeals denied that request on August 24, 1999. *Movant's Exhibit 1,* Hearing on August 31, 1999, before this Court.[5]

All parties before this Court, except the debtor, agree that the August 24 denial of the debtor's request to file an untimely appeal ended the domestic litigation between the debtor and Ms. Hubbard and that the award of the Fulton Avenue property to Ms. Hubbard was final.[6]

## B. Matters Before this Court

Since filing this case, the debtor has opposed the claims filed by those who have

In our opinion, bankruptcy and district courts should tread very carefully when asked to impose sanctions for violation of the automatic stay where the actions underlying the violation involve alimony, maintenance, or support. In each case, the court should carefully sift through the facts, keeping in mind the purposes of the automatic stay provision as well as concerns of justice, comity, and judicial economy that support abstention in domestic relations cases. Cf. *Kirby v. Mellenger,* 830 F.2d 176, 178 (11th Cir.1987) (diversity exception). Where the purposes of the automatic stay provision would clearly be served by affording a remedy for its violation, and the court would not be required to delve too deeply into family law, the court need not abstain from hearing the claim.

*Id.* at 1579–80.

6. While the debtor does not agree that this issue has been resolved, he does agree that he did not file his appeal to the Alabama Supreme Court timely and that the Court of Civil Appeals did deny his request to correct that default. A copy of the debtor's *Motion to File Extension to File Appeal to Supreme Court Out of Time A.R.C.P. Rule 44–1* is attached to his *Motion in Objection to Alter, Amend, Reconsider or Set Aside,* Proceeding No. 44 filed in this case on August 24, 1999. Apparently, it was that motion that the Alabama Court of Civil Appeals denied on August 24, 1999, ending the litigation between the debtor and Willie Mae Hubbard over the Fulton Avenue property. See Movant's Exhibit 1, Hearing on August 31, 1999, before this Court. However, the debtor continues to maintain that he has something pending before the state appellate courts in regard to the domestic litigation and he stated so at the hearing in this Court on November 16, 1999.

opposed him during the long and apparently litigious state court proceedings. These actions have produced many matters in this Court as well as a related matter in the United States District Court for the Northern District of Alabama.[7] Some have been resolved, some not.[8] Of those that have been resolved, many are discussed throughout this opinion. Of those that have not been resolved, some are under advisement by this Court. Those are:

1. The *Motion to Alter, Amend or Reconsider Or, In the Alternative, To Set Aside The Order On Confirmation* filed on August 17, 1999, by Ms. Crew, Proceeding No. 41.

2. The *Motion in Objection to Alter, Amend, Reconsider or Set Aside* filed on August 24, 1999, by the debtor, Proceeding No. 44.

3. The Chapter 13 Trustee's *Motion to Dismiss* this case, filed on September 29, 1999, Proceeding No. 48.[9]

4. The *Motion to Reconsider Attorney Fees of Phoenix Funding and Debtor's Objection to Trustee's Motion to Dismiss*, filed on October 18, 1999, by the debtor, Proceeding No. 51.[10]

## C. Predominate Claims

All of the matters mentioned in this opinion are related in some fashion to the parties' positions in regard to four claims filed in this case. Those claims are:

**Claim No. 2**—filed by Phoenix Funding on February 18, 1999, for $2,828.93. This claim was filed for the mortgage arrears claimed by Phoenix through February 1999 on the Fulton Avenue property debt. Claim No. 2 was amended on August 12, 1999 to $13,359.92. The debtor objected to claim no. 2 on August 24, 1999. At a hearing on September 27, 1999, the claim was reduced and allowed for $9,751.92 ($4,513.87 for attorney fees through the filing date of this case; $2,409.12 for mortgage arrearages for March 1999 through July 1999; and $2,828.93 for mortgage arrearages through February 1999).

**Claim No. 3**—filed by Wendy Brooks Crew on February 25, 1999, for $7,500.00. This claim was filed for attorney fees awarded by the state circuit court in its *Final Judgment of Divorce* (see Exhibit A to *Objection to Confirmation of Plan*, filed on February 17, 1999, Proceeding No. 17 in this Court). The debtor objected to claim no. 3 on March 16, 1999. In his objection the debtor

---

**7.** The district court matter is *Alex Hubbard, Jr. v. Streamline Mortgage: Phoenix Funding; Greentree Financial Corp.; Bob Moss; Gladys Dean Moore; and Pete Serico;* Case No. CV–99–J–1848–S. This Court understands from representations made by the debtor at hearings before this Court (particularly the hearing on November 16, 1999) that the debtor contends that he had an agreement with the attorneys for the mortgagee regarding attorney fees. The action before the United States District Court involves, among other matters, claimed civil rights violations. See attachment to *Motion in Objection to Phoenix Funding and Attorney Proof of Claim* filed on August 24, 1999, by the debtor, Proceeding No. 45 in this Court.

**8.** Since this case was filed on December 8, 1998, the Court has held 11 hearings. The dates of those hearings are: January 12, 1999; February 2, 1999; March 23, 1999; April 27, 1999; May 26, 1999; June 30, 1999; August 2, 1999; August 31, 1999; September

27, 1999; November 16, 1999; and February 29, 2000. Some of this Court's orders following some of those hearings are reproduced in this opinion.

**9.** This is the Trustee's third Motion to Dismiss. The first Motion to Dismiss was filed on January 29, 1999. An order denying that motion was entered on February 5, 1999. The second Motion to Dismiss was filed on March 12, 1999. An Order denying that motion was entered on August 5, 1999.

**10.** There are two other matters pending before this Court. And while none are currently under advisement, they are resolved by this opinion and order. They are:

1. The *Objection to Confirmation of Plan* filed by Phoenix Funding (Proceeding No. 8); and

2. The *Motion to Dismiss Objection's By Creditor and Trustee Under F.R.C.P. 12(b)* filed by the debtor (Proceeding No. 25).

contended that the *Final Judgment of Divorce* was on appeal. At a hearing on April 27, 1999, the debtor's objection was sustained and claim no. 3 was disallowed. Ms. Crew was instructed that if the state court determined that the debtor was indebted to her, she would be allowed to refile her claim.

**Claim No. 6**—filed by Wendy Brooks Crew on May 26, 1999, for $7,500.00. On May 7, 1999, the Alabama Court of Civil Appeals affirmed the Circuit Court's final Judgment of Divorce (See attachment to Claim No. 6). Ms. Crew filed this new claim for the attorney fees awarded to her in the Final Judgment of Divorce.

**Claim No. 7**—filed by Wendy Brooks Crew on August 16, 1999, in the amount of $500.00. In an order entered on May 20, 1999, by the circuit court, Ms. Crew was awarded an additional attorney fee of $500.00 for professional services rendered in the appeal (See attachment to Claim No. 7).

## D. Dismissal

### 1. Trustee's First Motion to Dismiss

The debtor filed this case on December 8, 1998. Because he failed to attend his First Meeting of Creditors scheduled for January 19, 1999, and failed to appear at the continued meeting on January 26, 1999, the Trustee filed his first *Motion to Dismiss* on January 29, 1999. After a hearing on February 2, 1999, this Court denied the motion and instructed the trustee to reschedule the creditors meeting.

### 2. Trustee's Second Motion to Dismiss And Related Matters

The Trustee filed a *Trustee's Objection to Confirmation and Motion to Dismiss* on March 12, 1999. The Trustee did not consider the debtor's proposed Chapter 13 plan to be feasible. After notice, a hearing was held on April 27, 1999. Appearing were the debtor; Mr. Davis; and Ms. Don-

na Byrd, an additional attorney for Tran-South and Phoenix. The hearing was continued for trial to be held on May 26, 1999. On May 26, 1999, the trial was continued to June 30, 1999. On June 30, 1999, the trial was continued to August 2, 1999. *The trial was finally held on August 2, 1999.* The debtor, Mr. Wiley, Mr. Franklin, Ms. Crew, and Mr. King appeared.

### a. Background

Prior to the August 2, 1999, hearing, on December 17, 1998, Phoenix filed a *Motion for Relief from Automatic Stay.* In that motion Phoenix represented to the Court that the debtor was in arrears on *"his"* mortgage payments for the Fulton Avenue property for August 1998 through December 1998.[11] Phoenix also represented that the total amount due and owing under the promissory note as of December 11, 1998, was $28,476.01 plus interest and attorney fees (as provided for in paragraph 7 of the Mortgage attached to the motion as Exhibit B).

After several continuances, an evidentiary hearing on this *Motion for Relief From Automatic Stay* was held on June 30, 1999, about a month before the hearing on the trustee's objection to confirmation and second motion to dismiss. At that time discussions were held between John Wiley, the then attorney for the debtor, and Sara Senesac, the attorney for Phoenix. After those discussions, the parties announced a settlement. A consent order was prepared by Ms. Senesac and mailed to Mr. Wiley.

Unfortunately, on July 9, 1999, before the consent order was entered, the debtor filed a *Motion of Objection To By Trustee and Phoenix Funding & Attorney.* The debtor contended in that document that Mr. Wiley had a conflict of interest that was not disclosed to the debtor or the Court. The debtor contended that Mr. Wiley represented Shirley Ann Hubbard, the debtor's first former wife in an unrelated domestic case. The debtor contend-

---

**11.** While Phoenix maintains that someone should make the payments on the mortgage debt, Phoenix does not agree with the debtor that he has an interest in the property.

ed that this "conflict" was detrimental to his position in regard to the motion for relief.[12]

On July 27, 1999, Phoenix filed a *Motion to Enforce Settlement Agreement*. In that pleading Phoenix represented that the debtor failed to comply with the settlement reached at the June 30, 1999, hearing. This matter was eventually resolved at the August 2, 1999, hearing along with the trustee's second motion to dismiss and along with other matters considered that day. As reproduced below, all were discussed in this Court's order entered on August 5, 1999.

### b. August 2, 1999, Hearing on the Trustee's Objection to Confirmation and Motion to Dismiss and Other Matters

The debtor, Mr Wiley, Mr. Franklin, Ms. Crew, and Mr. King appeared at a hearing on August 2, 1999. *At that hearing, the parties agreed that, in addition to hearing the Trustee's Objection to Confirmation and Motion to Dismiss, the Court could address and rule on other matters pending in this case.* The Court's Order of August 5, 1999, following the hearing explains. That order read:

The matters before the Court are the *Trustee's Objection to Confirmation and Motion to Dismiss* and the Confirmation Hearing. After notice, a hearing was held on August 2, 1999. Appearing were Alex Hubbard, Jr., the debtor; John Wiley, III, the attorney for the debtor; Marvin Franklin, the attorney for Phoenix Funding and TranSouth Financial; Wendy Crew, a creditor; and Charles King, the assistant Chapter 13 Trustee.

By agreement of the parties, the following matters scheduled for future hearings were also considered on August 2, 1999: 1) the *Motion to Enforce Settlement Agreement* filed on July 27, 1999 by Phoenix Funding; 2) the *Motion for*

*Relief from Automatic Stay* filed on December 17, 1998 by Phoenix Funding; 3) The *Motion for Relief from Stay* filed on July 28, 1999 by Associates/TranSouth Financial Corporation; 4) the *Motion of Objection to by Trustee and Phoenix Funding & Attorney* filed on July 9, 1999 by the debtor; and 5) the *Motion for Leave to Withdraw as Counsel* filed on August 2, 1999 by John Wiley, III. The parties agree that this Order resolves these matters as well as the scheduled matters.

An *Objection to Confirmation of Plan* was filed on January 15, 1999 by Phoenix Funding and a *Motion to Dismiss Objections by Creditors and Trustee under F.R.C.P. 12(b)* was filed on April 23, 1999 by the debtor. These matters have not been heard but the Court finds that this Order resolves those matters as well.

Wendy Brooks Crew, the attorney for Willie Mae Hubbard, filed a claim in this case for $7,500.00, a claim awarded her for attorney fees in a state court domestic relations matter. But because this claim was based on an order of the state court that has been appealed, at an earlier hearing this Court suggested that the issue of whether that claim is paid is an issue that should not be considered until the "state" court has decided the appeal. While the Alabama Court of Civil Appeals (the court appealed to and the court considering the appeal when this Court referred to the "state" court) has ruled on the issue and upheld the state court order (including the $7,500.00 attorney fee award), the debtor contends that this Court's delay of the issue until the "state" court has ruled includes the Supreme Court of Alabama. The debtor argues that the consideration of the issue of whether the $7,500.00 should be in his Chapter 13 case should be delayed until he has exercised all of his appeal

---

**12.** On August 2, 1999, for obvious reasons, Mr. Wiley filed a *Motion for Leave to Withdraw as Counsel*. The debtor did not object

and the Court granted the motion on August 5, 1999.

options. For the reasons this Court expressed on the record at this hearing, the issue will be delayed, but confirmation should not be. The confirmation order that will be entered here will not consider the $7,500.00 claim, as that claim is suspended pending an order of the Supreme Court of Alabama or expiration of time to appeal. However, this Court is concerned as such a delay does not appear to be in the debtor's best interest, as the time for paying that $7,500.00 within the time allowed in the Chapter 13 case, if the $7,500.00 is allowed, is obviously decreasing.

Based on the arguments of counsel, the pleadings, and by agreement of all parties, it is **ORDERED, ADJUDGED AND DECREED** that:

1. The *Trustee's Objection to Confirmation* is **OVERRULED** and the Trustee's *Motion to Dismiss* is **DENIED**. A separate confirmation order shall be entered;

The *Motion for Leave to Withdraw as Counsel* filed by John Wiley, III is **GRANTED;**

3. The *Motion of Objection to By Trustee and Phoenix Funding and Attorney* filed by the Debtor is **MOOT.** The status conference at 10:30 a.m. on August 9, 1999 on this motion will not be held;

1. The *Motion to Enforce Settlement Agreement* filed by Phoenix Funding is **MOOT;**

2. The *Motion for Relief from Automatic Stay* filed by Phoenix Funding is **CONDITIONALLY DENIED** (see no. 7 below);

3. The *Motion for Relief from Stay* filed by Associates/TranSouth Financial Corporation is **MOOT.** The hearing scheduled at 10:00 a.m. on August 17, 1999 on this motion will not be held.

4. The debtor is allowed to include the post-petition arrearage from February 1999 through July 1999 in his plan. Phoenix Funding may file a claim for the arrearage (plus fees and costs). The debtor is to begin making his future mortgage payments beginning with the mortgage payment due for August 1999. If the debtor fails to make any future monthly mortgage payments (according to the parties' mortgage contract) beginning with the mortgage payment due for August 1999, the motion for relief from stay is **GRANTED** without further order of this Court or notice to the parties.

DONE this the 5th day of August, 1999.

*Order,* entered August 5, 1999, Proceeding No. 40.

### c. Confirmation and Related Matters

On August 19, 1999, the Court entered the *Order of Confirmation* referred to in the August 5 order. That order required the debtor to make regular plan payments in the amount of $595.00 per month.[13] The order read in pertinent part:

The debtor shall pay to David P. Rogers, Jr., the Trustee, the sum of $595.00 PER MONTH, beginning August 2, 1999, for the remaining 52 months out of which amount the court costs and administrative fees of $160.00 shall be paid first. Once these costs and any attorney fee authorized to be paid from first distributions have been paid, the following fixed payments(s) shall be paid when a secured proof of claim is properly filed:

**13.** It is this amount the debtor *would later contend* at the November 16, 1999, hearing on the trustee's third *Motion to Dismiss,* that was an amount that included funds for paying claims he disputed. And it was at the November 16 hearing that the debtor offered his reasoning for not paying *any* Chapter 13 plan payments, or *any* part of those payments. He represented that he had not made his plan payments because the Court ordered $595 per month included payment on parts of some of the disputed claims, and that he did not understand what amount he was supposed to pay.

PHOENIX FUNDING ($2,828.93) FILED $ 90.00 PER MONTH
TRANSOUTH ($17,794.35) FILED $345.00 PER MONTH

The balance of monies received by the Court shall be distributed pro rata among the debtor's other creditor whose proofs of claim have been filed and allowed, such distribution to continue until all unsecured claims have been paid 100%.

---

*Order of Confirmation*, entered August 19, 1999, Proceeding No. 42.

### d. Phoenix Attorney Fees

On August 24, 1999, the debtor filed a *Motion in Objection to Phoenix Funding and Attorney Proof of Claim* as an objection to the Phoenix claim filed on February 18, 1999, for attorney fees in the amount of $2,828.93. That claim, claim no. 2, had been amended on August 12, 1999, to $13,359.92.[14] In his motion the debtor wrote:

1. Claim is to excessive if to be paid by debtor nor did I agreed to pay any fees or costs not incurred by debtor.

2. Debtor did not create this situation as to Phoenix Funding and will be seeking relief for such. See Exhibit A. [Exhibit A is an Application Under Section 706(f) of Civil Rights Act of 1964 and a copy of a Complaint filed in the United States District Court for the Northern District of Alabama.]

3. Phoenix Funding refusal to work with debtor is retaliation for my complaining of the way my loan was handled and the way debtor was mistreated base on race and relining and illegal disclosure statement.

4. Debtor had and written agreement with Phoenix Funding that this would not happen in the future business dealing. However it did.

Wherefore debtor pray this Honorable Court deny proof of claim if is to be paid by debtor and excluded from plan until legal matters due resolved as to race and other civil rights violations. Any other relief deem appropriate.

*Motion in Objection to Phoenix Funding and Attorney Proof of Claim*, filed August 24, 1999, Proceeding No. 45 in this Court. Parenthetical added in paragraph 2.[15]

After notice, the Court held a hearing on the debtor's objection to Claim No. 2 on September 27, 1999. Ms. Senesac and Mr. King appeared. *The debtor did not.*[16] Based on the evidence before the Court, the Court entered the following order on October 5, 1999:

Based on the arguments of counsel and the pleadings, the objection is sustained to the extent that claim number 2 is reduced and allowed in the amount of $9,751.92. According to counsel for the claimant, this claim was previously miscalculated and the appropriate breakdown of this claim at this time is $4,513.87 for attorneys fees through the filing date of this case, $2,409.12 for arrearages for March 1999 through July 1999, and $2,828.93 for prior arrearages through February, 1999.

*Order*, entered October 5, 1999, Proceeding No. 49.

On October 18, 1999, the debtor filed a *Motion to Reconsider Attorney Fees of Phoenix Funding and Trustee's Motion to*

---

**14.** This dramatic difference is explained in the Court's October 5, 1999, order quoted below.

**15.** At the hearing on November 16, 1999, the debtor agreed that he owed the mortgage arrears part of this claim. At that hearing he

disputed only the attorney fee portion of the claim.

**16.** At a later hearing the debtor claimed that he did not receive notice of the September 27, 1999, hearing.

*Dismiss.* In his motion Mr. Hubbard requested the Court to reconsider its October 5, 1999, order.[17] This in one of the matters now under advisement by this Court.

### e. Interim Matters

Before the September 27 hearing, a related matter was brought before the Court. On August 17, 1999, Ms. Crew filed a *Motion to Alter, Amend or Reconsider or, in the Alternative, to Set Aside the Order on Confirmation.* After notice, a hearing was held on August 31, 1999. Appearing were Ms. Hubbard, Ms. Senesac, and Ms. Crew. Based on the testimony and evidence, that matter was taken under advisement.

### 3. Trustee's Third *Motion to Dismiss* and Debtor's Opposition to Dismissal and Debtor's Motion to Reconsider

#### a. Background (Including the November 16, 1999, Hearing)

Because the debtor failed to make any plan payments after entry of this Court's August 5, 1999, order and the related August 19, 1999, *Order of Confirmation,* on September 29, 1999, the Chapter 13 trustee filed the *pending* third *Motion to Dismiss.* After notice, a hearing was held on November 16, 1999. The debtor, Ms. Senesac, Ms. Crew, Ms. Hubbard, and Mr. King appeared.

At that hearing the trustee established that the debtor's last Chapter 13 plan payment was July 27, 1999, and that the debtor had not made a Chapter 13 plan payment in any of the three months prior to the November 16, 1999, hearing. The debtor agreed that he had not made his payments but argued that he had not made his payments because he did not understand what amount he should have

been paying. He also argued that the $595.00 directed to be paid by the confirmation order included amounts that would pay claims he disputed, particularly the claims for attorneys fees by Phoenix and Ms. Crew.

At the hearing, after lengthy discussions about many of the other disputed matters associated with this case, in regard to the *Motion to Dismiss,* the Court explained to the Debtor the importance of making all of his plan payments, making them timely, and what the consequences would be if the payments were not made. At the hearing, the Court explained to the debtor:

> Mr. Hubbard I'm going to enter an order, an interim order, a temporary order, that you make $450.00 per month payments for this Chapter 13 case to go forward. Some of that's gonna go to TranSouth, some of it's gonna go to Phoenix, whatever. But I don't want you to get any further behind and I don't want them to get any further behind. It's going to take me, you know, a little while to sort all this out. But there's no reason that everybody ought to be punished because it's going to take some time. But I'm going to sort it all out and when I get through with it, if I decide that your payments need to be $500.00 a month, $600.00 a month, or $700.00 a month, whatever I order is what you're gonna have to pay. I may find that it should be $300.00 a month, I don't know, but when I get through with it, that's what you're gonna have to pay.

> If you don't pay it your case will get dismissed. **If you don't make the $450.00 per month payments, every month within the month that they are due, beginning, I'll give you a break, beginning with December, okay? I**

---

**17.** After notice, as discussed below, a hearing was held on this pleading, along with other matters, on November 16, 1999. That hearing was combined with a noticed hearing (noticed for November 9, 1999, but continued to be heard with the debtor's motion) on the trustee's third *Motion to Dismiss.* The Trust-

ee had already filed this third motion on September 29, 1999, overlapping the debtor's motion. This overlap explains why in the same pleading the debtor asked for reconsideration of the October 5, 1999, fee award and also opposed the trustee's motion.

**will dismiss your case.** If the trustee notifies me January 2 or whatever that Monday is, or February 1, March 1, April 1, that you haven't made the payment for the month prior, I will dismiss your case.

Now that's only interim. I'm going to decide the question of Ms. Brooks' fees, I'm going to decide the question of the attorneys fees to Phoenix, if I can. If I find that the district court lawsuit or the state court lawsuit prevents me from doing that and I have to wait, I'll tell you that. If I have to wait on them, when I get something from them, then I'll decide. But in the meantime, you have got to make those chapter 13 payments.

Hearing on November 16, 1999. Unofficial transcription.

### b. Interim Order

Because of the complexity and bitterness of the matters before the Court, after the hearings on August 2, 1999, and November 16, 1999, the Court recognized that something must be done to assist the debtor, and prevent any further harm to him and his creditors, by requiring the debtor to make regular plan payments that would at least cover his undisputed claims.[18] If this could be accomplished, the debtor would not become significantly further behind in his plan payments. To that end, (as quoted above from the November 16 hearing), the Court suggested, and the Chapter 13 trustee and the debtor agreed, that while the other matters were being resolved, the debtor would make plan payments of $450.00 per month, each month beginning with the December 1999 payment until the disputed claims could be resolved. And that if the amount of those payments needed to be adjusted later, that could be done. All present understood, or at least acknowledged, that the payments would begin with the December 1999 pay-

ment and that if payments were not made, the case would be dismissed.

The above parameters became the basis of the *Interim Order* referred to by the Court at the November 16, 1999, hearing. That order was entered on December 16, 1999, and read:

This matter came before the Court on a *Trustee's Motion to Dismiss* filed on September 29, 1999 and on the Debtor's *Motion to Reconsider Attorney Fees of Phoenix Funding and Trustee's Motion to Dismiss* filed on October 18, 1999. After notice, a hearing was held on November 16, 1999. Appearing were Alex Hubbard, Jr., the debtor; Sara Senesac, the attorney for Phoenix Funding; Willie Mae Hubbard, creditor; Wendy Brooks Crew, creditor and the attorney for Willie Mae Hubbard; and Charles King, the Assistant Chapter 13 Trustee.

Based on the evidence and arguments, both the Debtor's *Motion to Reconsider* and the *Trustee's Motion to Dismiss* are taken under advisement; however, this interim order is necessary to resolve two ongoing issues, these are: (1) that portion of the motion to dismiss regarding the Debtor's ongoing Chapter 13 plan payments; and (2) the parties' concerns regarding continuation of adequate property insurance for real property located at 2100 Fulton Avenue SW, Birmingham, Alabama (the property subject to many of the parties' disagreements).

Pending a determination of the above two matters and determination of the related matter under advisement from a previous hearing, that is, the *Motion to Alter, Amend or Reconsider or, In the Alternative to Set Aside Order of Confirmation Filed by Wendy Brooks Crew,* the Court enters the following interim order.

Based on the arguments of the parties, the pleadings and the agreement by

---

**18.** As noted above the debtor did not dispute that an arrearage amount existed on the Ful-

ton Avenue property mortgage debt. Similarly he did not dispute the TranSouth debt.

the Debtor, it is **ORDERED, ADJUDGED and DECREED** that:

1. *The Debtor shall pay to the Chapter 13 Trustee each month, as his Chapter 13 plan payment, a minimum of $450.00 per month beginning with the month of December 1999, or this case will be dismissed without further notice or hearing;*

2. The Debtor is to provide the Court, Ms. Sara Senesac (the attorney for Phoenix Funding), and Ms. Wendy Brooks–Crew (the attorney for Willie Mae Hubbard) proof of insurance on the property located at 2100 Fulton Avenue SW, Birmingham, Alabama, within 10 days of the date of this order or this case will be dismissed without further notice or hearing;

3. If the insurance lapses on the property and is not reinstated within 10 days of the lapse, or if the insurance is canceled and is not reinstated within any applicable grace period, this case will be dismissed without further notice or hearing.

DONE this the 16th day of December, 1999.

*Interim Order,* entered December 16, 1999, Proceeding No. 54 (emphasis added).

█ In making these determinations, the Court considered not only the specific matters before the Court but the Court's general experience in such matters. Where a debtor fails to make plan payments, but has some reason or excuse for not doing so, (although not a reason or excuse that would excuse the debtor from making payments), this Court usually allows, if there are no extenuating circumstances, the debtor another opportunity to demonstrate the desire and the good faith necessary to continue with the case. And in this case, notwithstanding that this debtor failed to make payments since July 1999, the Court allowed the debtor this opportunity to make such a demonstration; however, where, as here, a debtor has failed to make payments for a time as long as this debtor, the additional opportunity is normally allowed only with conditions. In this case, the condition was, the debtor would be given this opportunity to make payments, but that if he did not make his regular plan payments for the months following, beginning with the December 1999 payment, which was due by December 31, 1999, his case would be dismissed without further notice or hearing. As stated above, both the debtor and the trustee agreed.

*The debtor did not make the ordered December 1999 payment until January 7, 2000.*

### 4. Notice of Continuing Default

Because the debtor did not make his December 1999 payment in December, on January 7, 2000, the trustee filed his first *Notice of Continuing Default* with the Court advising the Court of that failure. Clearly at that time the debtor had violated this Court's December 16 order; however on January 13, 2000, the Court entered an order denying the notice, (allowing the case to proceed) partly because the debtor did make the December payment on January 7, 2000. In addition, because this payment was the debtor's first payment under the new order, and was one to be made between December 16, 1999, and December 31, 1999, a holiday season for many, the Court believed that the debtor should be given the benefit of the doubt. But in doing so, in a letter to the debtor mailed on January 13, 2000, the Court advised the debtor, as the Court had at the November 16 hearing, of the consequences of any future failure. That letter read:

Dear Mr. Hubbard:

Please note that your Chapter 13 plan payments must be made within the month due. Notwithstanding your characterization of the January 4, 2000 payment for your December 1999 obligation as "Debtor's Compliance with Court Order," you are in violation of my December 16, 1999, order.

I do not want you to be mistaken. If you do not make future payments within the month due, I will dismiss your case.

Letter mailed January 13, 2000, (in Court file).[19]

### 5. Court's Show Cause Hearing

After the debtor failed to make his December 1999 payment timely, he *then failed to make his January 2000 Chapter 13 plan payment within January 2000.* After this failure, the Court scheduled a hearing for February 29, 2000, requiring the debtor to appear and to show cause why his case should not be dismissed for failure to comply with this Court's December 16, 1999, order.[20]

Again, as the Court did at the conclusion of the November 16 hearing and as it did in its January 13, 2000, letter, the Court explained to the debtor the importance of making all of his Chapter 13 plan payments and again explained to the debtor that if he did not make all of his payments timely that his case would be dismissed. At the end of the February 29, 2000, the general discussion between the Court and Mr. Hubbard was as follows:

> THE COURT: Mr. Hubbard, regardless of what I do with anything today, you've got to make those payments every month, regardless—
>
> MR. HUBBARD: Right. Of course, I get my check on the 3rd and I make the payment on the 4th.
>
> THE COURT: Okay. Well, **if they are not received by the Trustee in the month that it's due,** whatever day that is. How many days in March? 31? 31st in March? However many in April and—If I don't go through that little thing you had in school I can't remember the days—but **I'm going to dismiss it.**
>
> MR. HUBBARD: Right.
>
> THE COURT: Any questions about that?
>
> MR. HUBBARD: No.
>
> THE COURT: Okay. Thanks.

Hearing on February 29, 2000, Unofficial Transcription.

### 6. The Debtor's Final Defaults

The Bankruptcy Code and this Court's Order of Confirmation require the debtor to make regular plan payments. This Court's December 16, 1999, order provided that if the debtor did not make all of his Chapter 13 plan payments within the months due, this case would be dismissed without further notice or hearing.

On August 3, 2000, the Trustee filed his second *Notice of Continuing Default.* That notice represented in contravention of the Bankruptcy Code, the Court's confirmation order, the Court's December 16, 1999, order and the Court's repeated suggestion, explanations and warnings, the debtor has again failed to timely make all of his plan payments.[21] And in fact, the trustee's records demonstrate that the debtor *did not make a plan payment for*

---

**19.** As explained earlier, the debtor was not then, and is not now, represented by counsel. The *Debtor's Compliance with Court Order* referred to in the January 13 letter was filed by the debtor on January 6, 2000, Proceeding No. 55 in this Court.

**20.** The debtor disagrees that he failed to make the December payment. The debtor believed that he was not required to resume his plan payments until January 2000. Clearly this was wrong. This Court's December 16, 1999 order read, "beginning with the month of December 1999," and this Court clearly explained that to the debtor at the November

16, 1999, hearing. The trustee's records prove that the debtor did not make the December payment. The debtor's first payment after his August 1999 to January 2000 hiatus was made on January 7, 2000. In effect, under the Court's December 16, 1999, order requiring a December payment in December 1999, the January 7, 2000 payment was credited as his December 1999 payment. Consequently, his next payment, February 8, 2000, was in effect his January 2000 payment. So again the debtor was behind on his payments.

**21.** That notice was served on the debtor by the Trustee by mail on August 3, 2000.

*either June 2000 or July 2000.*[22] For this Court, these will be the debtor's final defaults in this case.[23]

## IV. CONCLUSIONS OF LAW

▮ Pursuant to section 1307 of the Bankruptcy Code, 11 U.S.C. § 1307, this Court may dismiss a Chapter 13 case for cause. Cause includes the failure of a debtor to make timely Chapter 13 plan payments.[24] Notwithstanding repeated suggestions from the Court, and perfectly clear explanations of the consequences of failing to make *all* Chapter 13 plan payments as those payments became due, the debtor has failed to make all of his payments timely.[25]

**22.** While the trustee's records demonstrate that a June 1, 2000, payment was credited to the debtor's account, that payment was clearly made by the debtor in May 2000. For the payment to be credited by the trustee on June first, it would have had to have been mailed by the debtor and received by the trustee before June 1.

**23.** The trustee's records now demonstrate that *after* the trustee filed his second *Notice of Continuing Default* on August 3, 2000, and *after* the debtor was served with a copy of that notice by mail on August 3, 2000, *in confirmation of the trustee's representation that the debtor **did not make his June 2000 and July 2000 payments*** the debtor made two plan payments on August 10, 2000, both for $450.00, for a total of $900.00.

Presumably these payments were made to cover the defaults for June and July payments, and as a technical matter the Court must recognize that these payments could be credited to the June and July payments (leaving of course an August 2000 payment unpaid); **however,** even if the Court makes those recognitions, it may not ignore the debtor's continuing violations of this Court's order of confirmation and its order of December 16, 1999, and of the requirements placed on this and every debtor by the Bankruptcy Code in exchange for the benefits provided by that Code. This Court may not, and will not, condone the debtor's actions by permitting him any further chance to demonstrate that he is entitled to those benefits. Simply put, the debtor has not held up his side of the bargain. He cannot choose when he will comply with this Court's orders or the requirements of the Bankruptcy Code. For this Court to allow him to do so, but expect other debtors to do otherwise, would be arbitrary.

**24.** Many courts agree, including the following:

*In re Tornheim,* 239 B.R. 677, 685 (Bankr. E.D.N.Y.1999) "Even assuming that the Debtor had complied with this Court's orders, and further assuming that the Debtor was in fact eligible to be a Chapter 13 debtor, this case should nonetheless be dismissed for his failure to make monthly plan payments. Although the Trustee initially received certain payments, they ceased after only five months, and no further payments have been received by the Trustee since March of 1998. It is beyond argument that the failure to make plan payments is violative of Chapter 13...."

*In re King,* 217 B.R. 623, 626 (Bankr. S.D.Cal.1998). Failure to make plan payments is a material default under section 1307(c) warranting dismissal.

*In re McIntosh,* 1996 WL 391560 (Bankr. N.D.Ind., Jun.14, 1996). "Failure to do so [make plan payments] may be cause for dismissal." Parenthetical added.

*In re Haugland,* 199 B.R. 125, 128 (Bankr. N.J.1996) "Debtor's failure to comply with the Bankruptcy Code's provisions requiring timely payments under her Chapter 13 plan requires that the Association's cross-motion for dismissal be granted."

*In re Escobedo,* 169 B.R. 178, 179 (Bankr. N.D.Ind.1993), *aff'd, Escobedo v. Aikman,* 1993 WL 725091 (N.D.Ind., May 26, 1993), *aff'd, In re Escobedo,* 28 F.3d 34 (7th Cir. 1994). It "must make the plan payments required of it and those payments must be sufficient to do what the plan proposes."

*In re White,* 126 B.R. 542, 546, 547 (Bankr. N.D.Ill.1991) (a material default by a debtor justifies dismissal, citing), *In re Green,* 64 B.R. 530 (9th Cir. BAP 1986). Where a debtor failed to make sufficient Chapter 13 payments, court found this to be a material default warranting dismissal of the case.

*In re Davis,* 64 B.R. 358, 359 (Bankr. S.D.N.Y.1986) "the debtors' failure to make post-confirmation payments would constitute a material default by the debtors with respect to the terms of the confirmed plan within the meaning of § 11 U.S.C. 1307(c)(6) and is a specific ground for converting or dismissing a Chapter 13 case."

See also *In re Midkiff,* 85 B.R. 467 (Bankr. S.D.Ohio 1988); *In re Broman,* 82 B.R. 581 (Bankr.D.Colo.1988); and *In re Garcia,* 42 B.R. 33 (Bankr.D.Colo.1984) and *In re Delmonte,* 237 B.R. 132 (Bankr.E.D.Tex.1999).

**25.** At various times during this case the debtor has contended that he has mental prob-

This Court has given the debtor many chances to prove that he will make all of his plan payments timely and has explained what would happen if those payments were not so made. In November 1999, although the debtor had not made a plan payment since July 27, 1999, the Court gave the debtor a chance to demonstrate his willingness to do so. At that time the Court explained that this case would be dismissed if future payments were not made timely. In December 1999, the Court ordered that this case would be dismissed without further notice or hearing if all payments were not made timely. In January 2000, although the debtor violated that December order, the Court gave the debtor a second chance to demonstrate his willingness to make his payments. At that time, the Court wrote the debtor and explained that if all future payments were not timely made that the case would be dismissed. And in February 2000, although the debtor did not make his January 2000 payment timely, the Court gave the debtor a third chance to demonstrate his willingness to make all of his payments timely. But again, at that time, the Court explained to the debtor that if all payments were not made timely, this case would be dismissed. The Court cannot conceive of anything else it could have done to convince the debtor of the seriousness of this situation. Unfortunately, the debtor did not take advantage of any of the opportunities the Court provided and chose to ignore the Court's warnings.

■ Based on the above, the Court finds, as a matter of law, that the debtor's failure to make timely plan payments is cause under section 1307 for dismissing this case. The Court finds further the debtor's failure is: (1) an unreasonable delay by the debtor that is prejudicial to creditors; (2) a material default by the debtor with respect to a term of a confirmed plan; (3) and a willful failure of the debtor to abide by the orders of this Court. As such, the Chapter 13 Trustee's pending, third *Motion to Dismiss* is due to be granted.[26] And this case is due to be dismissed.[27]

The Court further finds that the debtor violated the conditions imposed by this Court's December 16, 1999, order as verified by the Trustee's second *Notice of Continuing Default* filed on August 3, 2000. And for this additional reason, this case is due to be dismissed.

## V. ORDER

Based on the above, it is **ORDERED, ADJUDGED AND DECREED** that:

1. The Trustee's third *Motion to Dismiss* is **GRANTED;**

---

lems that may affect his ability to manage his financial affairs or to participate in this case. Because of these suggestions, at times the Court questioned the debtor about those problems and his competency. But because of the debtor responses to those inquires, his obvious ability to discuss complex issues and facts, his ability to draft and file the numerous complex pleadings before this and other courts, and his ability to respond to difficult factual and legal questions in a meaningful manner, this Court cannot find that, even if the debtor has some mental problems, that those problems have affected his ability to participate in this case.

The Court recognizes its authority to enter orders for the protection of incompetent persons in certain circumstances. See Rule 17, Federal Rules of Civil procedure and Rules 7017 and 9014, Federal Rules of Bankruptcy Procedure. The Court also recognizes the right of an incompetent individual to file and prosecute a Chapter 13 bankruptcy in certain circumstances. See *In re Zawisza*, 73 B.R. 929 (Bankr.E.D.Pa.1987). But neither situation exists here. And of course, the appointment of a general guardian under state law, Section 26–2A–102, Code of Alabama 1975, is not, and arguably cannot be, before this Court.

**26.** A bankruptcy court may also act *sua sponte* in raising dismissal of a Chapter 13 case. See *In re Hahn*, 200 B.R. 249 (M.D.Fla.1996); *In re Greene*, 127 B.R. 805 (Bankr. N.D.Ohio 1991).

**27.** Because this case is being dismissed, the Court need not reach any conclusions of law in regard to the ownership of the Fulton Avenue property, that is even if it has the authority to do so.

2. This case is **DISMISSED,** pursuant to section 1307 of the Bankruptcy Code, 11 U.S.C. § 1307, for cause, including the debtor's failure to make all plan payments timely, which this Court considers to be:

 a. An unreasonable delay by the debtor that is prejudicial to creditors;

 b. A material default by the debtor with respect to a term of a confirmed plan;

 c. And, a willful failure to abide by the orders of this Court.

3. This case is also **DISMISSED** because of the debtor's violation of the conditions imposed by this Court's December 16, 1999, order as verified by the trustee's second *Notice of Continuing Default* filed on August 3, 2000;

4. All other matters pending before the Court, whether under advisement or not, are **MOOT.** These include:

 a. The *Motion to Alter, Amend or Reconsider Or, In the Alternative, To Set Aside The Order On Confirmation* filed by Ms. Crew (Proceeding No. 41);

 b. The *Motion in Objection to Alter, Amend, Reconsider or Set Aside* filed by the debtor (Proceeding No. 44);

 c. The *Debtor's Motion to Reconsider Attorney Fees of Phoenix Funding and Debtor's Objection to Trustee's Motion to Dismiss* (Proceeding No. 51) and includes any contest of claims formally or informally prosecuted by the debtor;

 d. The *Objection to Confirmation of Plan* filed by Phoenix Funding (Proceeding No. 8); and

 e. The *Motion to Dismiss Objection's By Creditor and Trustee Under F.R.C.P. 12(b)* filed by the debtor (Proceeding No. 25).