**In re Freddie GREEN, Debtor.**

**Bankruptcy No. 97–04205–BGC–13.**

United States Bankruptcy Court,
N.D. Alabama,
Southern Division.

Oct. 7, 1997.

Rita Hood, Bessemer, AL, for Debtor.

Mitchell Spears, Montevallo, AL, for Movant.

**ORDER GRANTING *MOTION TO TERMINATE STAY* (FILED BY NANCY GREEN); ORDER SUSTAINING TRUSTEE'S *OBJECTION TO CONFIRMATION;* AND ORDER GRANTING TRUSTEE'S *MOTION TO DISMISS***

BENJAMIN COHEN, Bankruptcy Judge.

There are three matters before the Court: a *Motion to Terminate Stay* filed by Nancy Green, the debtor's former wife; the Chapter 13 Trustee's *Objection to Confirmation;* and the Chapter 13 Trustee's *Motion to Dismiss.*

Ms. Green seeks permission to collect approximately $40,000.00 in unpaid, past due, child support and the Chapter 13 trustee seeks, based on the debtor's serial filing of

bankruptcy petitions, to terminate the instant case. Hearings were held on all matters. The motion for relief was heard on August 5, 1997 at which Mr. Freddie Green, the Debtor; Ms. Rita Hood, the attorney for the Debtor; Ms. Nancy Green, the Movant; and Mr. Mitchell Spears, the attorney for the Movant, appeared. Both the debtor and his former wife testified. Exhibits were admitted without objection. The trustee's matters were heard on August 11, 1997 at which the debtor and his attorney and the staff attorney for the trustee appeared. All agreed that the evidence admitted at the August 5th trial could be considered in adjudicating the trustee's matters.[1]

## I. Findings of Fact and Conclusions of Law

From the evidence offered at the trial of the *Motion to Terminate Stay* (that is the testimony of the debtor and the testimony of Ms. Green and the documents admitted as exhibits), the records of this Court and the records of the Chapter 13 trustee, the Court makes these findings of fact and based on those facts, makes its conclusions of law.

During the parties' marriage they had three sons, two of which had reached at least the age of 19 at the time of the hearing on these matters.[2] The parties were divorced on September 20, 1988. The parties' divorce decree provided for child support payments of both cash payments and house mortgage payments. Those payments have not been made. The failure to make those payments is the basis of the matters before the Court.

Ms. Green testified that from the time of the divorce to the filing of the current bankruptcy petition, the debtor failed to pay the state court ordered child support and failed to make required house payments. As such, Ms. Green was forced to make the house payments to forestall a foreclosure of her home.

Ms. Green testified that the current child support arrearage is $46,841.25. See Movant's Ex. 2. That figure includes an arrearage of $19,374.00 through September 27, 1 994 as calculated by the Circuit Court of Shelby County Alabama, Domestic Relations Division, in Case No. DR–88 085.03 and evidenced by an order entered by that court on September 29, 1994. See Movant's Ex. No. 1. That order is binding on this Court.[3]

Ms. Green testified that since the divorce, in satisfaction of the debtor's support obligations, she has received approximately $3,500.00 from the Shelby County Court, a $200.00 payment from the debtor for their childrens' school clothes, ar additional $400.00 payment from the debtor in one year and a payment of $350.00 from the debtor in 1996.[4] The debtor disagrees. He testified that he has paid over $10,000.00 in support but that the Shelby County Court has not given him proper credit for those payments.[5]

---

1. The parties to the second matter agreed that the Court could consider the evidence submitted for the August 5th hearing in deciding the trustee's objection and motion. This Court has done that and in addition has taken judicial knowledge of the records of the Chapter 13 trustee and this Court and has considered the facts contained in those records in deciding all matters.

2. The parties' sons are now 22, 19 and 15. See this Courts discussion in *Ehlers v. Howell (In re Ehlers)*, 189 B.R. 835 (Bankr.N.D.Ala.1995) where this Court held that past due child support payments were nondischargeable although the debtor's child had reached the age of majority during the time of the failure to pay the support.

3. See this Court's discussions in *Dorian v. Cornner(In re Cornner)*, 191 B.R. 199 (Bankr.N.D.Ala. 1995) and *Porterfield v. Cornner (In re Cornner)*, 191 B.R. 214 (Bankr.N.D.Ala.1995) and *Angus v. Wald (In re Wald)*, 208 B.R. 516 (Bankr.N.D.Ala. 1997) concerning the collateral estoppel effect of state court judgments in bankruptcy proceedings.

4. The state court's order of September 29, 1994 states that Ms. Green testified that the debtor had paid $2,800.00 to that point. The court found that an arrearage remained of $17,439.00, and because payments from May 1994 through September 1994 had not been made, that the total arrearage became $19,374.00.

5. The debtor contends that he has made substantial payments either through the state court or attorneys appearing at hearings on these matters and contends that these payments would reduce the amount owed but that those payments have not been properly credited against the amount owed. However, the debtor did not produce any documentary evidence to support this contention, but he did testify that on two occasions he paid at least $2000.00 to an attorney for the unpaid child support but that neither payment was recorded. The debtor also testified that his former wife sold his work equipment including tools and vehicles in an attempt to satisfy the debt owed but that she received an amount sub-

Because of the debtor's failure to make his child support payments, Ms. Green has been required to return to state court, according to her testimony, seven or eight times. While the debtor did not completely agree, he did testify that he was incarcerated at least once because of his failure to make the payments.

Since his divorce, Freddie Green, Jr. has filed seven cases in this Court. In all, he has filed eight. He filed his first case on November 21, 1986. The financial histories of those cases are summarized from the records of the Chapter 13 trustee and the Court, in the table below.

| Case No. | Date Filed | Total Amount of Claims Filed | Child Support Claim Filed | Total Amount Paid | Date Dismissed |
|---|---|---|---|---|---|
| 97–04205–BGC–13 (Present Case) | 06/10/97 | 0.00 | 0.00 | | |
| 96–08414–TBB–13 | 11/21/96 | $38,496.03 | $36,998.03 | 250.00 | 05/09/97 |
| 95–08035–TOM–7 (13 conv 09/09/96) | 12/21/95 | 8,602.11 No Claim Filed | 0.00 | 850.00 | 02/10/97 Discharge |
| 93–03847–RCF–13 | 06/03/93 | 14,944.69 | 12,327.00 | 0.00 | 08/30/93 |
| 92–09836T0M–13 | 12/31/92 | 520.00 | 0.00 No Claim Filed | 0.00 | 03/11/93 |
| 92–00095–RCF–13 [6] | 01/06/92 | 24,701.37 | 16,355.43 | 2,567.00 | 12/18/92 |
| 90–03144–WEJ–13 | 03/15/90 | 638.00 | 0.00 No Claim Filed | 0.00 | 06/27/90 |
| 86–09455–GSW–13 | 11/21/86 | 10,475.23 | 0.00 | 4,264.00 | 06/28/89 |

The debtor's conduct before this Court is contemptible. In four (Ms. Green did not file a claim in the fifth case) of the last five of his Chapter 13 cases (including the current case), Ms. Green's unpaid child support has constituted the vast majority of the claims or in the circumstance of the current case, the debtor's support obligation is the only debt listed by the debtor in his petition; in the five Chapter 13 cases filed since the parties' divorce, the debtor's support obligation has grown (as described by Ms. Green in her testimony and the amounts claimed in the debtor's bankruptcy cases) from $16,355.43 in 1992 to $46,841.25, at the time of the hearing on these matters; in the five Chapter 13 cases filed since the parties' divorce only a small percentage or no percentage of any claim was ever paid, including Ms. Green's claims; of the last three, Chapter 13 cases filed by the debtor, all have been dismissed because of the debtor's failure to make proposed plan payments; and, other than the intervention of a Chapter 7 case, in all five

stantially below the fair market value of the equipment. In all, the debtor testified that he has paid over $10,000.00 in support but that the Shelby County Court has not given him proper credit for that amount.

**6.** Ms. Green filed two claims in this case:

Mr. Green paid:

| | | |
|---|---|---|
| Claim No. 23 | $ 1,500.00 | $ 72.21 |
| Claim No. 24 | 14,855.43 | 724.09 |
| Total | $16,355.43 | $796.30 |

Chapter cases filed since the parties' divorce, the debtor filed his successive Chapter 13 cases within months of the dismissals of the preceding cases.

The debtor's conduct before the state court is equally contemptible. In the state court the debtor has failed to pay child support obligations of over $45,000.00. Ms. Green has had to return to state court on seven or eight occasion to enforce the parties' divorce decree. And on at least one occasion, the debtor was incarcerated because of his failure to pay.[7]

### A. Relief from Stay and Dismissal

Ms. Green is entitled to relief from the automatic stay for "cause," including the lack of "adequate protection." 11 U.S.C § 362(d). The trustee is entitled to have his objection to confirmation sustained and his motion to dismiss granted if the latest case was not filed in "good faith." 11 U.S.C. § 1325(a)(3) and 11 U.S.C. § 1307(c)(5).

#### 1. Relief from Stay

■ The debtor's actions in this Court and the state court, and the conclusions that must be drawn from those actions, demonstrate that the debtor has little intention of following through with any bankruptcy court reorganization plan. For this Court to find that Ms. Green is adequately protected in the present case, or any future case, would have no factual basis. "Cause" exists for purposes of section 362.

In the recent 1994 amendments to the Bankruptcy Code, Congress recognized the importance of child support payments and, at least in the bankruptcy context, gave such payments priority status. 11 U.S.C.

§ 507(a)(7). Debtors that choose to pay these debts through Chapter 13 plans, must demonstrate that not only will they pay the debts but that they will pay them also in accordance with section 507. In this case, the Court must conclude that the intent of Mr. Green's bankruptcy filings is to prevent Ms. Green from exercising her state law right to collect unpaid, past due, child support.[8] There is no evidence that this debtor will make payments in this case, or any other Chapter 13 case, to satisfy his priority debts. As such, Ms. Green's only remedy is collection of the debts in state court. Because the only impediment to that remedy is the stay imposed by the Bankruptcy Code, it is this Court's responsibility, based on the debtor's actions in this Court and in the state court, to remove that impediment. There is cause for granting relief from the automatic stay.

#### 2. Dismissal

■ The debtor's actions in this Court and in the state court are deplorable. The serial filings and the debtor's failure to complete, or even make legitimate attempts to complete, the plans he has proposed in these cases, or otherwise to pay his state court ordered child support, demonstrates bad faith. There is no evidence whatsoever to substantiate a change in the debtor's circumstances that would entitle him to a presumption that this bankruptcy case was filed in good faith, but there is ample evidence to substantiate findings of bad faith, abuse of the bankruptcy process and a total lack of intent to pay past due child support obligations in the state court or to pay them through a Chapter 13 plan in this Court.[9] This evidence includes:

> Section 1325(a) of the Bankruptcy Code sets forth a good faith requirement in Chapter 13. Bankruptcy courts have a duty to preserve the bankruptcy process for its intended purpose and may dismiss a Chapter 13 case which is filed in bad faith. *Shell Oil Co. v. Waldron*, 785 F.2d 936 (11th Cir.1986). The standard for determining whether a petition is filed in good faith is a "totality of the circumstances" test. *Johnson v. Home State Bank*, 501 U.S. 78, 111 S.Ct. 2150, 115 L.Ed.2d 66 (1991); *Jim Walter Homes, Inc. v. Saylors*, 869 F.2d 1434 (11th Cir.1989); *Kitchens v. Georgia Railroad Bank and Trust Co.*, 702 F.2d 885 (11th Cir.1983). The factors (the *"Kitchens* Fac-

---

**7.** See his Courts opinion *In re Allison*, 182 B.R. 881 (Bankr.N.D.Ala.1995), discussing contempt in relation to the failure to pay child support.

**8.** The only debt listed in the debtor's current petition is his child support obligation but that debt is listed for only $10,000.00.

**9.** "A Motion to Dismiss a Chapter 13 case of lack of good faith is measured by the same standard for determining good faith at confirmation under § 1325(a)(3)." *In re Bucco*, 205 B.R. 323 (Bankr.M.D.Fla.1996).

In that context, the court in *In re Armwood*, 175 B.R. 779, 784–85 (Bankr.N.D.Ga.1994) wrote:

1. The debtor has filed seven bankruptcy cases since his divorce.

2. The debtor has made few payments in any of his Chapter 13 bankruptcy cases.

3. The debtor has included his unpaid child support in many of the Chapter 13 cases but has not made plan payments sufficient to pay the support.

4. The debtor has not made his child support payments in state court.

5. The debtor testified that he has an interest in a company that is worth over $3,000,000.00 but the debtor failed to list that asset in his bankruptcy petition or to otherwise advise the Court or the trustee of that asset but instead listed only $800.00 of assets in his petition, consisting of household goods and apparel.[10]

tors") to be considered in determining whether a petition was filed in good faith are:

1. The amount of the debtor's income from all sources;
2. The living expenses of the debtor and his dependents;
3. The amount of attorney's fees;
4. The probable or expected duration of the debtor's Chapter 13 plan;
5. The motivations and sincerity of the debtor in seeking relief under the provisions of Chapter 13;
6. The debtor's degree of effort;
7. The debtor's ability to earn and the likelihood of fluctuation in earnings;
8. Special circumstances such as inordinate medical expenses;
9. The frequency with which the debtor has sought relief under the Bankruptcy Reform Act and its predecessors;
10. The circumstances under which the debtor has contracted debts and has demonstrated bona fides, or lack thereof, in dealings with creditors;
11. The burden which the plan's administration would place on the Trustee;
12. The extent to which claims are modified and the extent of preferential treatment among classes of creditors;
13. Substantiality of repayment to the unsecured creditors;
14. Consideration of the type of debt to be discharged and whether such debt would be nondischargeable under Chapter 7;
15. The accuracy of the plan's statements of debts and expenses and whether any inaccuracies are an attempt to mislead the court; and
16. Other factors or exceptional circumstances.

*Kitchens*, 702 F.2d 885.

In the event of serial petitions, to avoid dismissal on the grounds of bad faith, a debtor usually should be able to show a change in circumstances between the two filings. *In re Jones*, 105 B.R. 1007 (N.D.Ala.1989). A finding of bad faith does not require a finding of actual fraud, malice, scienter or an intent to defraud. *Waldron*, 785 F.2d 936 (11th Cir. 1986).

*Id.*

This Court has considered the factors in *Kitchens* and has considered whether there has been a change in circumstances sufficient to defeat a motion to dismiss. As explained above, the Court finds that the current case was filed in bad faith and that the debtor's circumstances have not changed during the time of his serial filings.

10. The debtor testified that he has file, or intends to file, a claim against a pending probate estate that if allowed, would pay the full amount of his unpaid child support. The debtor contends that he has an interest in a construction company that has a contract with a housing authority to build over 200 houses at over $200,000.00 each. The debtor contends that his partner in that venture died and that the partner's estate owes the debtor an immediate amount of $25,000.00 (for work performed in building three of the houses) and an amount of one-third of $10,000,-000.00 (for work performed in building three of the houses) and an amount of one-third of $10,-000,000.00 (as the debtor's interest in the existing company, corporation or housing authority contract). The debtor testified that this claim arose approximately two weeks before the hearing before the Court but the debtor did not provide any documentary evidence to support his claim to this asset. He did testify that there was a document to support his claim, but he did not offer that document as evidence, or even show that document to either counsel or the Court. When asked what document supported his claim, the debtor answered, "This document," while pointing to a folder he had in his possession during his testimony. In support of his claim, however, the debtor did testify that the son of his business partner was to be in Court for the hearing on this matter to explain the debtor's interest in the company and the debtor's claim against the probate estate but that he, the debtor, did not know, why the son was not present to offer such evidence.

The Court has not considered the debtor's testimony regarding his interest in a construction business or his possible claims against a pending probate estate. In his current bankruptcy petition, on his "Summary of Schedules," the debtor listed the value of his *total assets as $800.00.* On his Schedules A and B the debtor listed the property that comprises that value.

The debtor's petition was filed on June 10, 1997, less than two months before the August 5, 1997 hearing but did not include any mention of

6. The debtor's continued filing of bankruptcy petitions is an obvious attempt to forestall collection of the unpaid child support.

7. From the time of the state court's order in 1994 the amount of unpaid support has grown by over 100%.

8. During the nine years the debtor has failed to make adequate support payments, the couple's three children have lived in the house the debtor was to have made mortgage payments for and Ms. Green has raised two of their children to an age of 19 or older.

9. Because of the debtor's failure to make his payments, Ms. Green was required to make payments to stop foreclosure on her house.

10. The amount of money Ms. Green has received through the bankruptcy process cannot even be characterized as minimal.

11. The amount she has received from the state court, while maybe minimal, is still woefully inadequate.

In *In re Eason,* 181 B.R. 127 (Bankr. N.D.Ala.1995) (reversed on other grounds) this Court wrote:

Serial filings raise the question of whether a debtor's current bankruptcy filing is made in good faith. This is a factual question. And whenever this Court is called upon to appraise prerequisite "good faith" in a Chapter 13 case, the Court is charged by the Court of Appeals for the Eleventh Circuit accordingly:

We hold that with section 1325(a)(3) Congress intended to provide bankruptcy courts with a discretionary means to pre-

serve the bankruptcy process for its intended purpose. Accordingly, whenever a Chapter 13 petition appears to be tainted with a questionable purpose, it is incumbent upon the bankruptcy courts to examine and question the debtor's motives. If the court discovers unmistakable manifestations of bad faith, ... confirmation must be denied.

Unmistakable manifestations of bad faith need not be based upon a finding of actual fraud, requiring proof of malice, scienter or an intent to defraud. We simply require that the bankruptcy courts preserve the integrity of the bankruptcy process by refusing to condone its abuse.

The cornerstone of the bankruptcy courts has always been the doing of equity. The protections and forgiveness inherent in the bankruptcy laws surely require conduct consistent with the concepts of basic honesty. Good faith or basic honesty is the very antithesis of attempting to circumvent a legal obligation through a technicality of the law.

*In re Waldron,* 785 F.2d 936, 941 (11th Cir.1986).

This Court has examined and questioned the debtor's motives and finds unmistakable manifestations of bad faith. This Court must preserve the integrity of the bankruptcy process by refusing to condone its abuse. From the facts presented the Court finds that the filing of the current case lacked good faith. Confirmation must be denied and consequently this case must be dismissed.

## B. Conclusion

Without question, not only is the debtor's former wife entitled to relief that allows her to pursue her debt in state court, but, be-

any interest in what the debtor now claims is worth more that $3,333,333.00, an interest, if it exists, obviously was in existence before the bankruptcy filing as the debtor testified that he is owed $25,000.00 for work in building three houses. Is this Court to believe that the debtor's over 3 million dollar interest in a company arose within the few weeks between the bankruptcy filing and the point two weeks before the August 5 hearing (the time of his partner's death) and

that three houses were constructed in the same time that gave rise to the debtor's claim of $25,-000.00? Or is this Court to believe that the debtor's interest in the probate estate originated in an interest that existed before the bankruptcy filing but was concealed from the Court and the debtor's former wife? Or is the Court to believe that the debtor does not have an interest in a probate estate that is worth in excess of 3 million dollars?

cause of the debtor's absolute recalcitrance in paying his court-ordered child support, she is also entitled to such relief so long as the debtor has not paid his debt. This may be accomplished in two ways. One, the motion for relief from the stay should be granted for present relief and to allow future relief to collect any unpaid child support the debtor attempts to add in any future case he may file. Two, the trustee's motion to dismiss should be granted with the possibility of a prohibition that the debtor shall not file another Chapter 13 case in this Court for 180 days from the date of dismissal of the pending case. In this manner the debtor's abusive filings will be restrained, his former wife will receive some relief, and the integrity of the bankruptcy system will be supported.

## II. ORDER

Based on the above, it is therefore **OR-DERED, ADJUDGED AND DECREED,** that:

1. The *Motion to Terminate Stay* is **GRANTED** as to Ms. Green's request to return to state court to collect past due child support and is **GRANTED** as to any future stay imposed by any future bankruptcy case filed by the debtor in regards to *the debt subject* to this order;

2. The trustee's *Objection to Confirmation,* pursuant to 11 U.S.C. § 1325(a)(3), is **SUSTAINED;**

3. The trustee's *Motion to Dismiss,* pursuant to 11 U.S.C. § 1307(c)(5), is **GRANTED;** and

4. For purposes of 11 U.S.C. § 109(g) this case is also **DISMISSED** because of the debtor's willful failure to abide by prior orders of this Court.