### In re Shelia Annette VANFOSSEN, Debtor.

### No. 00–42749–BGC–13.

United States Bankruptcy Court, N.D. Alabama, Southern Division.

Jan. 24, 2001.

---

Willis Clay, Gadsden, AL, for debtor.

Edward Peterson, Birmingham, AL, for Alabama Power Company.

David P. Rogers, Jr., Birmingham, AL, trustee.

## ORDER

BENJAMIN COHEN, Bankruptcy Judge.

The matters before the Court are *Alabama Power Company's Motion to Dismiss Case; Motion for Sanctions for Violation of Court's Order; and Motion to Show Cause Why Debtor Should Not be Held in Contempt* filed on December 4, 2000; *Alabama Power Company's Objection to Confirmation* filed on December 7, 2000; the Chapter 13 *Trustee's Motion to Dismiss* filed on December 14, 2000; and confirmation of the debtor's plan. After notice, a hearing was held on January 9, 2001. Edward Peterson, attorney for Alabama Power Company; and Charles King, the Assistant Chapter 13 Trustee; appeared in Court. Willis Clay, attorney for the debtor, appeared by telephone. The debtor did not appear.

## I. Background

The debtor has filed eight Chapter 13 petitions in this Court in less than six years. She filed her first case on April 6, 1995, and filed her last case on September 12, 2000. In her seventh case, (case number 00–01785 filed on March 22, 2000), both Alabama Power Company and the trustee sought and obtained dismissal. A hearing was held in that case on August 22, 2000, on *Alabama Power Company's Motion to Dismiss* and on the *Trustee's Motion to Dismiss*. James Cockrell, the attorney for the debtor; Edward Peterson, the attorney for Alabama Power Company; and Sims Crawford, the attorney for the Chapter 13 Trustee, appeared.[1]

At the conclusion of the hearing, the Court orally ruled that the case would be dismissed and that the debtor would be prohibited from filing another case for 180 days. On September 12, 2000, the Court entered a written order that dismissed the case and prohibited the debtor from filing another case for 180 days. That order read:

## ORDER

The matters before the Court are a *Trustee's Motion to Dismiss* filed on July 18, 2000, and *Alabama Power Company's Motion to Dismiss Case* filed on July 24, 2000. After notice, a hearing was held on August 22, 2000. James Cockrell, the attorney for the debtor; Edward Peterson, the attorney for Alabama Power Company; and Sims Crawford, the attorney for the Chapter 13 Trustee, appeared.

The current case is the debtor's seventh case.

### Case No. 95–02008–TOM–7

The debtor's first case, case no. 95–02008–TOM–7, was filed in the Southern Division on April 6, 1995, as a Chapter 13 case. The case was converted to one under Chapter 7 on November 13, 1995. The debtor received her discharge on April 16, 1996.

---

1. The debtor's attorney in the present case was not her attorney in her seventh case.

### Case No. 96–02964–BGC–13

The debtor's second case, case no. 96–02964–BGC–13, was filed in the Southern Division on May 1, 1996. The debtor paid $525.00 of $6,256.48 in filed claims during the pendency of the case. The case was dismissed on February 7, 1997.

### Case No. 97–01311–TBB–13

The debtor's third case, case no. 97–01311–TBB–13, was filed in the Southern Division on February 18, 1997. The debtor paid $654.00 of $16,903.36 in filed claims during the pendency of the case. The case was dismissed on January 29, 1998.

### Case No. 98–40526–JSS–13

The debtor's fourth case, case no. 98–40526–JSS–13, was filed in the Eastern Division on February 18, 1998. The debtor paid $150.00 of $17,548.06 in filed claims during the pendency of this case. The case was dismissed on August 20, 1998.

### Case No. 98–42901–JSS–7

The debtor's fifth case, case no. 98–42901–JSS–7, was filed in the Eastern Division on September 11, 1998, as a Chapter 13 case. The debtor made no payments. The case was converted to one under Chapter 7 on February 22, 1999. The debtor received her discharge on May 25, 1999.

### Case No. 99–43406–JSS–13

The debtor's sixth case, case no. 99–43406–JSS–13, was filed in the Eastern Division on November 19, 1999. The debtor made no payments. The case was dismissed on March 16, 2000.

### Case No. 00–01785–BGC–13

The debtor's seventh and current case, case no. 00–01785–BGC–13, was filed on March 22, 2000. The debtor made one payment of $250.00 on May 23, 2000.

Based on the arguments of counsel, the pleadings, and the debtor's case filing history, it appears to the Court that the motions are due to be granted.

It is therefore **ORDERED, ADJUDGED and DECREED** that:

1. The *Trustee's to Dismiss* is **GRANTED;**

2. *Alabama Power Company's Motion to Dismiss Case* is **GRANTED;**

3. The debtor is prohibited from filing another Chapter 13 case for 180 days from the date of this order.

DONE this the 12th day of September, 2000.

*Order,* Entered September 12, 2000, Proceeding No. 21.

On the same day, the debtor filed the current case in the Eastern Division of this Court. After the Court there became aware of this Court's September 12 order, the case was transferred to this Division on October 2, 2000. In her defense, the debtor argues that when she filed the current case she was not aware of the Court's oral ruling or written order.[2]

---

**2.** The debtor's attorney in case number 00–01785 was present in court when the Court announced the ruling that became the written order. May the Court impart his knowledge of the contents of the Court's oral ruling to the debtor? The debtor does not believe so. The debtor explained, through her attorney in the current case, that she did not have knowledge of the Court's oral ruling when she filed the current case. That explanation prompts the Court to question, if she did not have that knowledge, why did she file the current case? If she did not have that knowledge, why did

she believe that she needed to file another case? And, if she did not have that knowledge, why did she file the current case in the Eastern Division of this Court?

On the other hand, assuming the debtor had knowledge of the oral ruling and its contents, may the Court enforce that ruling against the debtor? May the debtor ignore that ruling? May she act in contravention of that ruling before a formal written order is entered? This Court attempted to answer similar difficult questions in *In re Nail,* 195 B.R. 922 (Bankr.N.D.Ala.1996). In *Nail* this

## II. Contentions

Alabama Power Company contends that the current case was filed in bad faith, that this case should be dismissed, and that the Court should impose sanctions against the debtor. Alabama Power Company argues that the Court should prohibit the debtor from filing another case for 180 days and should require the debtor to pay the company's attorney fees.

The debtor consents to dismissal but objects to Alabama Power Company's request for sanctions.[3]

## III. Issues

There are two issues: Should this case be dismissed? Should sanctions be imposed on the debtor?

## IV. Discussion

### A. Dismissal

■ Based on this Court's order of September 12, 2000, the debtor's consent, and the discussion below, the Court finds that this case should be dismissed.[4]

### B. Sanctions

To determine whether sanctions should be imposed, the Court has considered whether the current case was filed in bad faith and whether section 109(g) of the Bankruptcy Code applies.[5]

#### 1. Factors

#### a. Bad Faith

■ The Court of Appeals for the Eleventh Circuit, in *Shell Oil Co. v. Waldron (In re Waldron)*, 785 F.2d 936, 941 (11th Cir.1986), *cert. dismissed*, 478 U.S. 1028, 106 S.Ct. 3343, 92 L.Ed.2d 763 (1986), instructs that if a debtor's Chapter 13 petition appears to be tainted, the debtor's motives must be questioned.[6] The *per curiam* opinion in *Waldron* reads in part:

> We hold that with section 1325(a)(3) Congress intended to provide bankruptcy courts with a discretionary means to preserve the bankruptcy process for its intended purpose. Accordingly, *whenever a Chapter 13 petition appears to be tainted with a questionable purpose, it is incumbent upon the bankruptcy courts to examine and question the debtor's motives.* If the court discovers unmistakable manifestations of bad faith, ... confirmation must be denied.
>
> Unmistakable manifestations of bad faith need not be based upon a finding of

---

Court orally ruled that a dismissed Chapter 13 case should be reinstated. Before the Court entered its written order formalizing that ruling, a creditor with knowledge of the hearing on the debtor's motion to reinstate completed a foreclosure of a mortgage held on the debtor's home. This Court found that the foreclosure should be set aside.

**3.** At the hearing on January 9, 2001, debtor's counsel advised the Court that the debtor consented to dismissal. In response, the Court advised counsel for the debtor that if the case were dismissed, the 180–day bar to refile imposed in the September 12, 2000, order would be reimposed. Counsel agreed.

**4.** A debtor's lack of good faith may also constitute cause for dismissal of a bankruptcy petition. *In re Moog*, 159 B.R. 357, 360 (Bankr.S.D.Fla.1993) (citing *In re Albany Partners*, 749 F.2d 670 (11th Cir.1984)). See the discussions below.

**5.** Section 109(g), 11 U.S.C. § 109(g) reads in part:

no individual ... may be a debtor under this title who has been a debtor in a case pending under this title in the preceding 180 days if—the case was dismissed by the court for willful failure of the debtor to abide by orders of the court, or to appear before the court in proper prosecution of the case....

*Id.*

**6.** Pursuant to section 105 of the Bankruptcy Code, 11 U.S.C. § 105, this Court is also charged that:

No provision of this title providing for the raising of an issue by a party in interest shall be construed to preclude the court from, sua sponte, taking any action or making any determination necessary or appropriate to enforce or implement court orders or rules, or to prevent an abuse of process. *Id.* See *In re Hahn*, 200 B.R. 249 (M.D.Fla. 1996) and *In re Greene*, 127 B.R. 805 (Bankr. N.D.Ohio 1991) where those courts discuss the application of that section.

actual fraud, requiring proof of malice, scienter or an intent to defraud. We simply require that the bankruptcy courts preserve the integrity of the bankruptcy process by refusing to condone its abuse.

The cornerstone of the bankruptcy courts has always been the doing of equity. The protections and forgiveness inherent in the bankruptcy laws surely require conduct consistent with the concepts of basic honesty. Good faith or basic honesty is the very antithesis of

attempting to circumvent a legal obligation through a technicality of the law. *Id.* (emphasis added).

■ Based on the facts before the Court, the Court finds that Ms. Vanfossen's petition does indeed appear to be tainted.[7] Thus, in accordance with *Waldron*, this Court must examine Ms. Vanfossen's motives to determine whether this case was filed in good faith.[8]

■ To decide whether the case was filed in good faith, this Court has applied the standards required by *Waldron*.[9]

---

7. A bankruptcy petition filed with an intent to abuse the judicial process and to abuse the purposes of reorganization may evidence a lack of good faith on the part of the debtor. *Natural Land Corporation v. Baker Farms, Inc. (In re Natural Land Corporation)*, 825 F.2d 296, 298 (11th Cir.1987); *Albany Partners, Ltd. v. Westbrook (In re Albany Partners, Ltd.)*, 749 F.2d 670, 674 (11th Cir.1984). Clearly Ms. Vanfossen took whatever actions she believed were necessary to protect her interests. But while the intended result of those actions may be understandable, the process to reach that result must be questioned as that process demonstrates an attempt to circumvent and to frustrate the very judicial process from which Ms. Vanfossen now seeks indulgence. Thus the petition appears to be tainted. In that regard, this Court has a duty independent of that of the parties to prevent an abuse of process. The court's opinion in *In re Huerta*, 137 B.R. 356 (Bankr.C.D.Cal.1992) explains:

> The court has an independent duty to make a "considered assessment" of the debtor's good faith. *In re Warren*, 89 B.R. 87, 90 (9th Cir. BAP 1988) (citing *In re Goeb*, 675 F.2d 1386, 1390 (9th Cir.1982)). See also *In re Harris*, 132 B.R. 166, 170 (Bankr. S.D.Iowa 1989) (citing *In re Rimgale*, 669 F.2d 426, 431 (7th Cir.1982)); *In re Chaffin*, 836 F.2d 215, 216 (5th Cir.1988). Even if all the creditors of a proposed plan accept it, and even where no creditor opposes confirmation, the Court still has an independent duty to determine debtor's good faith. *Warren*, 89 B.R. at 90. "The good faith requirement is one of the central, perhaps the most important confirmation finding to be made by the court in any Chapter 13 case. Each case must be judged on its own facts." *In re Kull*, 12 B.R. 654, 658 (S.D.Ga.1981) (cited with approval in *Warren*, 89 B.R. at 90). Under the requirements of § 1325(b)(1)(B), "[t]he court should conduct more than a ministerial review related to payments in order

> that it may make an informed and independent judgment concerning whether a plan was proposed in good faith." *Warren*, 89 B.R. at 95.

*Id.* at 366.

8. Many of the cases, other than *Waldron*, offering guidance of how to make a determination of whether a bankruptcy petition was filed in bad faith are cases filed under Chapter 11 of the Bankruptcy Code. This Court does not know of any reason to distinguish those cases from the present Chapter 13 case for purposes of that limited definition. In support, this Court notes that many courts have long recognized that even if the Bankruptcy Code does not specifically provide that the filing of a petition must be made in good faith, that in both Chapter 11 and Chapter 13 situations, a determination of a debtor's good faith at the time of filing a petition is the same determination as that of the debtor's good faith in proposing a plan of reorganization. *Albany Partners, Ltd. v. Westbrook (In re Albany Partners, Ltd.)*, 749 F.2d 670, 674 (11th Cir.1984) (Chapter 11 petition); *In re Bucco*, 205 B.R. 323, 324 (Bankr.M.D.Fla.1996) (Chapter 13 petition).

9. While this Court believes that the general tests established by *Waldron* (and those of the cases of *Natural Land Corporation* and *Albany Partners* cited in notes 6 and 7 above) are the appropriate tests to apply, this Court has, to the extent that facts are available, also considered the test described by the Court of Appeals for the Eleventh Circuit in *Kitchens v. Georgia Railroad Bank and Trust Co.*, 702 F.2d 885 (11th Cir.1983). That test is related to *Waldron*. The court's opinion *In re Armwood*, 175 B.R. 779, 784–85 (Bankr.N.D.Ga. 1994) explains:

> Section 1325(a) of the Bankruptcy Code sets forth a good faith requirement in Chapter 13. Bankruptcy courts have a duty to

Through that application, the Court has considered the debtor's bankruptcy history which includes the debtor's serial filings, her two conversions to Chapter 7, and her failure to complete the current case.

### (1) Serial Filings

The debtor has filed *eight Chapter 13 cases in less than six years.* Four were filed in the Eastern Division of this Court, four in the Southern Division.[10]

In *In re Eason,* 181 B.R. 127 (Bankr. N.D.Ala.1995) (reversed on other grounds) this Court wrote, "Serial filings raise the question of whether a debtor's current bankruptcy filing is made in good faith. This is a factual question." *Id.* at 136 (citing *Waldron* for the standard to apply

preserve the bankruptcy process for its intended purpose and may dismiss a Chapter 13 case which is filed in bad faith. *Shell Oil Co. v. Waldron,* 785 F.2d 936 (11th Cir.1986). The standard for determining whether a petition is filed in good faith is a "totality of the circumstances" test. *Johnson v. Home State Bank,* 501 U.S. 78, 111 S.Ct. 2150, 115 L.Ed.2d 66 (1991); *Jim Walter Homes, Inc. v. Saylors,* 869 F.2d 1434 (11th Cir.1989); *Kitchens v. Georgia Railroad Bank and Trust Co.,* 702 F.2d 885 (11th Cir.1983). The factors (the *"Kitchens* Factors") to be considered in determining whether a petition was filed in good faith are:

1. The amount of the debtor's income from all sources;
2. The living expenses of the debtor and his dependents;
3. The amount of attorney's fees;
4. The probable or expected duration of the debtor's Chapter 13 plan;
5. The motivations and sincerity of the debtor in seeking relief under the provisions of Chapter 13;
6. The debtor's degree of effort;
7. The debtor's ability to earn and the likelihood of fluctuation in earnings;
8. Special circumstances such as inordinate medical expenses;
9. The frequency with which the debtor has sought relief under the Bankruptcy Reform Act and its predecessors;
10. The circumstances under which the debtor has contracted debts and has demonstrated bona fides, or lack thereof, in dealings with creditors;
11. The burden which the plan's administration would place on the Trustee;

to determine whether a case was filed in bad faith.) See also *In re Green,* 214 B.R. 503 (Bankr.N.D.Ala.1997). To answer that factual question here, the Court has reviewed records in all of the debtor's prior cases. Those records support a finding that the current case was not filed in good faith.

The debtor has filed eight Chapter 13 cases in less than six years. None were successful. Specifically, the Court finds:

1. The debtor's first Chapter 13 case was converted to Chapter 7;

2. The debtor filed her second Chapter 13 case *less than a month* after receiving her Chapter 7 discharge. In that case she paid only $525.00 of $6,256.48 in

12. The extent to which claims are modified and the extent of preferential treatment among classes of creditors;
13. Substantiality of repayment to the unsecured creditors;
14. Consideration of the type of debt to be discharged and whether such debt would be nondischargeable under Chapter 7;
15. The accuracy of the plan's statements of debts and expenses and whether any inaccuracies are an *attempt to mislead* the court; and
16. Other factors or exceptional circumstances.

*Kitchens,* 702 F.2d 885.

In the event of serial petitions, to avoid dismissal on the grounds of bad faith, a debtor usually should be able to show a change in circumstances between the two filings. *In re Jones,* 105 B.R. 1007 (N.D.Ala.1989). A finding of bad faith does not require a finding of actual fraud, malice, scienter or an intent to defraud. *Waldron,* 785 F.2d 936 (11th Cir.1986). *Id.* As explained below, this Court finds, after considering *Waldron* and others, that the current case was filed in bad faith. Consideration of the *Kitchen* factors supports that conclusion.

**10.** It is apparent that the debtor made her choice of where to file these cases without considering her address or this Court's administrative boundaries as she has lived at the same address for at least the last two cases and those cases were filed in different divisions of this Court.

filed claims before that case was dismissed;

3. The debtor filed her third Chapter 13 case *less than two weeks* after the second case was dismissed. In that case she paid only $654.00 of $16,903.36 in filed claims before that case was dismissed;

4. The debtor filed her fourth Chapter 13 case *less than a month* after her third case was dismissed. She paid only $150.00 of $17,548.06 before that case was dismissed;

5. The debtor filed her fifth Chapter 13 case less *than a month* after her fourth case was dismissed. That case was converted to Chapter 7;

6. The debtor filed her sixth Chapter 13 case *less than six months* after receiving the Chapter 7 discharge in her fifth case. She did not make any payments in that case before it was dismissed;

7. The debtor filed her seventh Chapter 13 case *within six days* of the dismissal of her sixth case. The debtor made one payment of only $250.00 in that case;

8. The debtor filed her eighth case, the current case, *on the same day* as her seventh case was dismissed. The debtor has not made any payments in this current case.

Based on these facts alone, the Court could find that the debtor's actions constitute bad faith and that the current case was filed in bad faith.[11]

---

11. The circumstances of individual cases and the totality of the circumstances carry more weight than the simple raw number of cases filed. (See *In re McCoy*, 237 B.R. 419 (Bankr. S.D.Ohio 1999) for a discussion of this issue.) For instance, in *In re Bates*, 243 B.R. 466 (Bankr.N.D.Ala.1999) this Court considered an objection to confirmation of a debtor's sixth Chapter 13 case. The Court's discussion and decision there demonstrates the contrasts that may exist. In *Bates* this Court wrote:

Including the present case, the debtor has filed six Chapter 13 cases in this Court. While appearing to be abusive, an analysis of these cases supports the debtor's contention that the current case was filed in good faith.

The debtor filed case no. 86–02246 on March 3, 1986. In that case the debtor paid $2,567.42 of the $2,794.68 in filed claims. When that case was dismissed on June 9,1988, the debtor had a balance due of.$283.61.

The debtor filed case no. 88–05520 on June 9, 1988. In that case the debtor paid $3,329.00 of the $5,423.83 in filed claims. When that case was dismissed on August 17, 1990, the debtor had a balance due of $2,161.34.

The debtor filed case no. 92–05857 on August 7, 1992. In that case the debtor completed his plan by paying the $5,798.52 in filed claims. The debtor was granted a discharge.

The debtor filed case no. 95–03110 on May 5, 1995. As explained above, in that case the debtor completed his plan by paying the $5,541.01 in filed claims. The debt-

or should have been granted a discharge in that case.

Jim Walter Homes objects to confirmation of the plan proposed in the current case and contends that the debtor's prior conduct demonstrates bad faith and that the latest filing is an abuse of the bankruptcy laws. Jim Walter Homes argues that, "This case was filed solely to harass and impede the Movant in enforcing their rights to foreclose the mortgage under the laws of the state of Alabama."

The debtor disagrees and offers that he asked for the prior case dismissal, and filed the current case, to accommodate medical debts associated with his wife's illness, eventual death, and the debts associated with his teenage daughter's similar illness.

The parties agree that the debtor was to have paid his mortgage payments direct to Jim Walter Homes during the pendency of the prior case. The parties agree that the debtor failed to make all of those payments. And the debtor admits that this deficiency also influenced his decision to dismiss the last case and file the current one.

This Court has considered the factors listed in *In re Kitchens*. If for no other reason, this Court must find that the "motivations and sincerity of the debtor in seeking relief under the provisions of Chapter 13" are genuine. The debtor has filed prior cases but in all but one he paid the majority, if not all, of the filed claims. Currently, the debtor's personal situation requires understanding. His wife has died. He and his daughter, who according to the debtor's testimony has the same illness that caused his wife's death, live in the house securing

### (2) Conversions

A Chapter 13 debtor has a right to convert a Chapter 13 case to a Chapter 7 case at any time pursuant to section 1307(a) of the Bankruptcy Code, see 11 U.S.C. § 1307(a). But a debtor may not receive a discharge in a Chapter 7 case where the debtor has received "a discharge in a Chapter 7 case commenced within six years before the date of the filing of the [second] petition." 11 U.S.C. § 727(a)(8) (parenthetical added).

This debtor has filed two Chapter 13 cases that were converted to Chapter 7 cases. The debtor received Chapter 7 discharges in both cases. Unfortunately, the second discharge was granted within the six-year period described above.

The debtor's first bankruptcy case, case number 95–02008–TOM–7, was filed in the Southern Division on April 6, 1995, as a Chapter 13 case. That case was converted to Chapter 7 on November 13, 1995. The debtor received her Chapter 7 discharge on April 16, 1996.

The debtor's fifth bankruptcy case, case number 98–42901–JSS–7, (and her second Chapter 7 case) was filed in the Eastern Division on September 11, 1998, also as a Chapter 13 case. That case was converted to Chapter 7 on February 22, 1999. And the debtor received her Chapter 7 discharge in that case on May 25, 1999.[12]

These conversions and discharges raise obvious questions. What is the status of the debts discharged in these cases? What is the impact on the current case?

In regard to the status of the "discharged" debts, because the debtor received, "a discharge in a Chapter 7 case commenced within six years before the date of the filing of the [second] petition," she was not entitled to a second Chapter 7 discharge less than six years later. Clearly section 727(a)(8) of the Bankruptcy Code prohibited the second discharge. And clearly section 727(a)(8) of the Bankruptcy Code, was violated when that second discharge was entered. Presumably the second discharge had no legal effect on the debts listed in that case and those debts were not discharged.[13]

In regard to the current case, it is clear to the Court that the debtor's actions after the second "discharge" perpetuated the section 727 violation. After receiving the second Chapter 7 discharge, the debtor filed three Chapter 13 cases. However in none of those cases did the debtor make any attempt to advise the Court or her creditors of the problems associated with the second discharge and she did not make any attempt to correct the violation.

### (3) Latest Filing

The debtor filed the current case on September 12, 2000, in the Eastern Division of this Court.[14] That case was transferred to this division on October 2, 2000.

Jim Walter Homes' interests. While the debtor is behind on his payments on that mortgage, he has demonstrated in his prior case that given the opportunity, he will pay his debts through a confirmed Chapter 13 plan. The "totality of the circumstances" demonstrate that this case was filed in good faith.

Based on the evidence before the Court, in the form of the debtor's testimony and the records of this Court, and in reliance on the reasoning and law presented in *In re Todd,* 181 B.R. 997 (Bankr.N.D.Ala.1995) and in *In re Green,* 214 B.R. 503 (Bankr. N.D.Ala.1997), the Court finds that the criteria of section 1325 of the Bankruptcy Code have been satisfied. The debtor's proposed plan is due to be confirmed and the

objection to confirmation is due to be overruled.
*Id.* at 470–71 (footnotes omitted). *The instant case is however, quite different.*

12. This second discharge was of course obtained in a case filed in a separate division of this Court. And while the Court has the technical ability to monitor such abuses, there are obvious practical problems in doing so.

13. The Court has not however made any formal determination of the status of the debts "discharged" in the second Chapter 7 case.

14. As discussed above, that case was filed on the same day as this Court entered its written order prohibiting the debtor from filing another case for 180 days.

The debtor's required first meeting of creditors was scheduled for December 6, 2000, and continued to December 13, 2000. The debtor did not attend.

The debtor has not made any plan payments in this case.

### (4) Conclusion to Bad Faith

Considering the debtor's bankruptcy history, her options, and her actions, this Court's order of September 12, 2000, the representations of the parties at the January 9 hearing, and the Court's and the trustees' records in this and the debtor's other bankruptcy cases, (whether the Court considers the debtor had knowledge of the September 12, 2000, order regardless of whether her attorney at the time attended the hearing when that order was discussed), the Court finds that the debtor's actions were in bad faith and that the latest case was filed in bad faith.[15]

**b. Delay Prejudicial to Creditors, Willful Failure to Abide by Orders of the Court, and Improper Prosecution of the Case**

Based on the above, the Court also finds that:

1. The debtor's actions have *constituted unreasonable delay that is prejudicial to her creditors.* Serial filings frequently require creditors to wait an unreasonable amount of time to be paid. That is prejudicial. And that is the situation here;

2. The debtor's actions have *constituted a willful failure of the debtor to abide by the orders of this Court.* At best, the debtor has violated the confirmation orders entered in her Chapter 13 cases requiring her to make periodic plan payments. At worst, the debtor violated this Court's August 22, 2000, oral ruling and its September 12, 2000, order pro-

hibiting her from filing another bankruptcy case; and

3. The debtor's actions have *constituted a failure to appear before the Court in proper prosecution of the current case.* Not only did the debtor fail to appear at her required first meeting of creditors, she also failed to make any payments in this case. And then she did not even show this Court or the others involved the courtesy of appearing at the hearing on the pending matters.

### 2. Application of Factors

#### a. 180–Day Bar to Refiling

█ Because the Court has found that the current case was filed in bad faith and the debtor's actions constitute an unreasonable delay by the debtor that is prejudicial to creditors, a willful failure of the debtor to abide by the orders of this Court, and a failure to appear before the Court in proper prosecution of the case, the Court determines, pursuant to section 109(g) of the Bankruptcy Code, 11 U.S.C. § 109(g), that the debtor should be prohibited from filing another Chapter 13 case for a period of 180 days from the date of this order. As stated above, the debtor was aware of this sanction when she consented to dismissal. And she accepted that penalty.

#### b. Attorney Fees

█ In its motion, Alabama Power Company requested the Court to impose sanctions against the debtor in the form of attorney fees for its counsel's time and efforts in prosecuting the pending matters. Under the inherent powers of this Court, after a finding of bad faith, this Court may impose sanctions against a debtor by awarding attorney fees to an opponent. *Glatter v. Mroz (In re Mroz),* 65 F.3d 1567

---

15. See this Court's discussions in *In re Steeley,* 243 B.R. 421 (Bankr.N.D.Ala.1999), *In re Green,* 214 B.R. 503 (Bankr.N.D.Ala.1997) and *In re Hubbard,* 259 B.R. 186, *Memorandum Opinion and Order,* entered August 16, 2000, on which the Court relies and adopts in support of the instant order. The Court has considered the factors discussed in those cases and based on the authority cited there and the facts of this case, finds that the debtor's filing of the current case was in bad faith.

(11th Cir.1995).[16] Based on the facts discussed above, the Court finds that such sanctions are appropriate here.[17] Alabama Power Company is entitled to recover its attorney fees.[18]

Alabama Power Company should not have had to file the matters it did or prosecute them. The debtor should not have filed the current case. This Court told her not to file it. She had already filed seven prior cases without any success in reorganizing her finances. And she had obtained relief from this Court in violation of section 727. Clearly the debtor's actions constitute bad faith. Alabama Power Company should not be penalized for those actions. The debtor should.

### V. Order

Based on the above, it is **ORDERED** that:

1. Alabama Power Company's Motion to Dismiss Case is **GRANTED;**

2. The *Trustee's Motion to Dismiss* is **GRANTED;**

3. This case is **DISMISSED;**

4. The debtor is prohibited from filing another Chapter 13 case for 180 days from the date of this Order;

5. Alabama Power Company's *Motion for Sanctions* is **GRANTED;**

6. Alabama Power Company is awarded attorney fees of **$450.00** which the debtor shall pay, to her attorney forthwith, for transfer to counsel for Alabama Power Company;

7. Alabama Power Company's *Motion to Show Cause Why Debtor Should Not be Held in Contempt* is **MOOT;** and

8. *Alabama Power Company's Objection to Confirmation* is **MOOT.**

---

**16.** See also *Chambers v. NASCO, Inc.,* 501 U.S. 32, 111 S.Ct. 2123, 115 L.Ed.2d 27 (1991); *In re Rimsat, Limited,* 212 F.3d 1039 (7th Cir.2000); *In re Collins,* 250 B.R. 645 (Bankr.N.D.Ill.2000); *In re Graffy,* 233 B.R. 894 (Bankr.M.D.Fla.1999); *In re Spectee Group, Inc.,* 185 B.R. 146 (Bankr.S.D.N.Y. 1995).

**17.** The Court finds that the debtor was afforded due process. She was aware of the allegations of bad faith and the movant's request for sanctions. A hearing was scheduled, the debtor received notice of the hearing, the hearing was held, and the debtor had an opportunity to present her opposition to the sanctions.

**18.** At the hearing on January 9, 2001, counsel for Alabama Power Company represented that his fee was $450.00.