In re Betty Lynn HATEM, Debtor.

Betty Lynn Hatem, Appellant,

v.

Elizabeth Kennedy, Appellee.

No. CIV.A.01–077–CB–C.

United States District Court,
S.D. Alabama,
Southern Division.

June 7, 2001.

George W. Finkbohner, Jr., The Finkbohner Law Firm, LLC, Mobile, AL, for Elizabeth L. Kennedy.

John C. McAleer, III, Mobile, trustee.

## MEMORANDUM OPINION

BUTLER, Chief Judge.

### I. INTRODUCTION

This case is before the Court on appeal from a decision of the United States Bankruptcy Court for the Southern District of Alabama, Case No. 00–14816–WSS–13. On January 4, 2001, the bankruptcy court issued an order denying confirmation of the debtor's Chapter 13 bankruptcy plan and dismissing debtor's Chapter 13 case with a 180–day injunction from filing for relief under any chapter of the Bankruptcy Code. (Bankruptcy Pleadings, Doc. 13). The debtor, Betty Lynn Kennedy Hatem, a/k/a Betty Derouen, a/k/a Betty Harvey ("Hatem"), appeals the bankruptcy court's decision to this Court pursuant to 28 U.S.C. § 158(a).

For the reasons stated below, the Court finds that the bankruptcy court's order is due to be **AFFIRMED**.

### II. FACTUAL AND PROCEDURAL BACKGROUND

This case arises from Hatem's Chapter 13 bankruptcy proceedings. The events leading up to Hatem's Chapter 13 filing are important to an understanding of the case and are set forth briefly herein.

Prior to filing for Chapter 13 bankruptcy, Hatem had been involved in litigation in the Circuit Court of Baldwin County, Alabama, in an action styled *Elizabeth L. Kennedy v. Betty Lynn Hatem and Leroy Hatem,* CV–97–323, involving a dispute between Hatem and Elizabeth Kennedy, Hatem's mother and the appellee herein, concerning the ownership of 2.7 acres of land

Samuel M. McMillan, Herman D. Padgett, Mobile, AL, for Betty Lynn Kennedy Hatem.

and a home located in Montrose, Alabama ("the property"). (Bankruptcy pleadings, Doc. 5, Ex. A). On March 31, 1999, the Circuit Court of Baldwin County set aside a deed executed by Kennedy, which transferred Kennedy's one-half interest in the property to Hatem, holding that the deed was void because it was the result of fraud, deception, and undue influence by Hatem and Hatem's then husband. (Bankruptcy pleadings, Doc. 5, Exs. A and B). The circuit court declared both Hatem and Kennedy once again one-half owners of the property. (Id.). On January 11, 2000, the circuit court issued an order of sale of the property requiring its appraisal, sale, and equitable division. (Bankruptcy pleadings, Doc. 5, Ex. B). The circuit court amended its order on May 11, 2000, in order to give both Kennedy and Hatem the exclusive right to bid on the property within thirty days from the date of filing of the appraisal. (Bankruptcy pleadings, Doc. 5, Ex. B). On October 27, 2000, following Hatem's appeal, the Alabama Court of Civil Appeals affirmed the circuit court's orders. (Bankruptcy pleading, Doc. 5, Ex. C). On November 6, 2000, the court-appointed appraiser filed its appraisal with the circuit court, establishing the value of the property at $410,000.00. (Plaintiff's trial exhibit 9). Pursuant to the circuit court's order of sale, Kennedy and Hatem had thirty days from that date to submit their bids on the property. (Bankruptcy pleadings, Doc. 5, Ex. B).

On November 29, 2000, one week before the expiration of the bid period, Hatem filed these proceedings for Chapter 13 bankruptcy. (Bankruptcy pleadings, Doc. 1). In the petition and accompanying schedules, Hatem indicated that she was the sole owner of the 2.7 acres of land and the home located in Montrose, Alabama, and that the property was subject to a mortgage in favor of Regions Bank in the amount of $54,623.00 and a vendor's lien in favor of Elizabeth Kennedy in the amount of $210,000.00, totaling $264,623.00 in secured claims on the property. (Bankruptcy pleadings, Doc. 1). Hatem also listed unsecured debt of $52,252.00,[1] bringing her total reported liabilities to $316,875.00. (Id.). Hatem listed the value of her interest in the property as $205,000.00 and her total assets, including personal property, as $215,403.00. (Id.). Hatem reported a monthly income of $1,582.00 and monthly expenditures of $1,572.00. (Id.).

Hatem's Chapter 13 plan proposed to pay the Trustee's commission, Hatem's attorney, and the unsecured property tax claim of $1,009.00 by making monthly payments to the Trustee of $50.00. (Bankruptcy pleadings, Doc. 2). The plan further proposed that Hatem would make monthly payments directly to Regions Mortgage, outside the plan, in the amount of $581.00 on its secured mortgage. (Id.). The plan proposed no payments to Hatem's unsecured nonpriority creditors on their claims totaling $51,243.00. (Id.).

On December 13, 2000, Kennedy filed a motion for relief from the automatic stay and to dismiss Hatem's Chapter 13 proceeding on the grounds that Hatem did not file the Chapter 13 petition in good faith; Hatem did not propose a Chapter 13 plan in good faith; and Hatem's sole purpose in filing the petition was to invoke the automatic stay provisions of the Bankruptcy Code to prevent the sale and division of the property by the state court. (Bankruptcy pleadings, Docs. 5 and 6).

---

1. Hatem's unsecured debt consisted of an unsecured property tax claim of $1,009.00 and $51,243.00 in unsecured nonpriority claims comprised almost entirely of credit card debt. (Id.).

On January 4, 2001, Hatem's Chapter 13 case came before the bankruptcy court for a confirmation hearing. (Bankruptcy pleadings, Doc. 13). The Honorable William S. Shulman, United States Bankruptcy Judge, considered Hatem's petition and the proffered evidence, including testimony from Hatem and Kennedy. At the conclusion of the evidence, the bankruptcy court found that the Chapter 13 petition and plan had been filed in bad faith and denied confirmation of the plan and dismissed Hatem's Chapter 13 case with a 180–day injunction against further bankruptcy filings. (R. 65; Bankruptcy pleadings, Doc. 13). On January 10, 2001, the bankruptcy court ruled as moot Kennedy's motions for relief from stay and to dismiss Hatem's Chapter 13 case. (Bankruptcy pleadings, Doc. 14).

On January 11, 2001, Hatem filed her notice of appeal to this Court. (Doc. 1).

### III. STANDARD OF REVIEW

The district court sits as an appellate court in an appeal of a bankruptcy court decision. *In re Williamson,* 15 F.3d 1037, 1038 (11th Cir.1994). Sitting in its appellate capacity, the court makes no independent factual findings. *Id.* The bankruptcy court's findings of fact will not be set aside unless clearly erroneous. *Id.* A finding of fact is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire record is left with the definite and firm conviction that a mistake has been committed. *General Trading, Inc. v. Yale Materials Handling Corp.,* 119 F.3d 1485, 1494 (11th Cir.1997).

In contrast, a district court reviews de novo a bankruptcy court's conclusions of law. *In re Simmons,* 200 F.3d 738, 741 (11th Cir.2000); *Williamson,* 15 F.3d at 1038. Equitable determinations by a bankruptcy court are subject to review under an abuse of discretion standard. *In re General Dev. Corp.,* 84 F.3d 1364, 1367 (11th Cir.1996).

### IV. ISSUE

Hatem presents the following issue on appeal: whether the bankruptcy court erred in denying confirmation of her Chapter 13 plan, in dismissing her Chapter 13 case, and in refusing to allow her to amend her plan, all for failure to file in good faith. (Docs. 1 and 2).

### V. DISCUSSION

On January 4, 2001, at the confirmation hearing on Hatem's Chapter 13 plan, the bankruptcy court found that neither Hatem's Chapter 13 petition nor her plan had been filed in good faith. (R. 64–65; Bankruptcy pleadings, Doc. 13). In addition, the bankruptcy court found that Hatem's purported amended plan, which was proposed by Hatem at the hearing, was not feasible and likewise lacked good faith. (R. 63–64). Based on those findings, the bankruptcy court denied confirmation of Hatem's plan and dismissed Hatem's Chapter 13 case with a 180–day injunction against further bankruptcy filings. (R. 65). It is the bankruptcy court's finding of bad faith that is at issue in this appeal.

Under the Bankruptcy Code, a Chapter 13 plan must be confirmed by the bankruptcy court if meets the six criteria set forth in 11 U.S.C. § 1325(a).[2] This

---

**2.** Section 1325(a) provides:
  (a) Except as provided in subsection (b), the court shall confirm a plan if—

(1) the plan complies with the provisions of this chapter and with the other applicable provisions of this title;

appeal focuses on the third of these criteria found in § 1325(a)(3), requiring that the plan be proposed in good faith. A Chapter 13 plan cannot be confirmed if it fails to satisfy the good faith requirement. *In re Waldron,* 785 F.2d 936, 939 (11th Cir.1986) (quoting 11 U.S.C. § 1325(a)(3)). That requirement "is the only safety valve available through which plans attempting to twist the law to malevolent ends may be cast out." *Id.* (citations omitted).

■ Whether a Chapter 13 plan has been proposed in good faith is a question of fact subject to the "clearly erroneous" standard of review. *In re Saylors,* 869 F.2d 1434, 1438 (11th Cir.1989). While the Bankruptcy Code does not define the term "good faith," the Eleventh Circuit has interpreted "good faith" as "requiring that there is a reasonable likelihood that the plan will achieve a result consistent with the objectives and purposes of the Code." *In re McCormick,* 49 F.3d 1524, 1526 (11th Cir.1995). The petition may not be used as a device to serve some "unworthy purpose" of the petitioner. *Waldron,* 785 F.2d at 939 (citations omitted).

■ In analyzing the good faith of the debtor, the court looks to the "totality of the circumstances" surrounding the plan. *See McCormick,* 49 F.3d at 1526. In *In re*

*Kitchens,* the Eleventh Circuit set forth a nonexclusive list of factors that the bankruptcy court should consider in making a determination of good faith:

(1) the amount of the debtor's income from all sources; (2) the living expenses of the debtor and his dependents; (3) the amount of attorney's fees; (4) the probable or expected duration of the debtor's Chapter 13 plan; (5) the motivations of the debtor and his sincerity in seeking relief under the provisions of Chapter 13; (6) the debtor's degree of effort; (7) the debtor's ability to earn and the likelihood of fluctuation in his earnings; (8) special circumstances such as inordinate medical expenses; (9) the frequency with which the debtor has sought relief under the Bankruptcy Reform Act and its predecessors; (10) the circumstances under which the debtor has contracted his debts and has demonstrated bona fides, or lack of same, in dealings with his creditors; (11) the burden which the plan's administration would place on the trustee.

*Kitchens,* 702 F.2d 885, 888–89 (11th Cir. 1983). The court further enumerated three additional factors for consideration, those being: substantiality of the repayment to the unsecured creditors; consideration of the type of debt to be discharged

---

(2) any fee, charge, or amount required under chapter 123 of title 28, or by the plan, to be paid before confirmation, has been paid;

(3) **the plan has been proposed in good faith and not by any means forbidden by law;**

(4) the value, as of the effective date of the plan, of property to be distributed under the plan on account of each allowed unsecured claim is not less than the amount that would be paid on such claim if the estate of the debtor were liquidated under chapter 7 of this title on such date;

(5) with respect to each allowed secured claim provided for by the plan—

(A) the holder of such claim has accepted the plan;

(B)(i) the plan provides that the holder of such claim retain the lien securing such claim; and

(ii) the value, as of the effective date of the plan, of property to be distributed under the plan on account of such claim is not less than the allowed amount of such claim; or

(C) the debtor surrenders the property securing such claim to such holder; and

(6) the debtor will be able to make all payments under the plan and to comply with the plan.

(Emphasis added).

and whether such debt would be nondischargeable under Chapter 7; and the accuracy of the plan's statements of debts and expenses and whether any inaccuracies are an attempt to mislead the court. *Id.* at 889.

After hearing the evidence presented at the confirmation hearing in this case, the bankruptcy court found that Hatem's petition contained multiple misstatements and omissions regarding the ownership of the property, the claims against the property, and the value of the property. (R. 60–61). The court held that the admittedly erroneous information indicated either a callous disregard of a debtor's duties in filling out the Chapter 13 schedules and plan or an intentional misrepresentation of information in an attempt to secure confirmation and avoid the consequences of the state court litigation. (R. 61–62). The court further noted that Hatem had assets that, if liquidated, would be more than sufficient to pay off her indebtedness; yet, Hatem had proposed to pay nothing to her unsecured nonpriority creditors. (R. 61). In addition, the court noted that the timing of the filing of the petition, which was only three weeks before the property was to be sold and only one week before the expiration of Hatem's right to bid on the property, indicated that the petition was filed to forestall the court ordered sale. (R. 62–63). The court found Hatem's testimony that she was unaware of the state court orders regarding the sale of the property incredible. (R. 63). The court further found that Hatem's purported amended plan to obtain a mortgage on the property and buy out her mother's interest in the property, which Hatem proposed from the witness stand at the hearing, was not feasible and was merely a last ditch attempt to thwart the dismissal of the case. (R. 63–64). The court concluded that neither the petition, nor the original or amended plans, had been submitted in good faith. (R. 64).

After reviewing the entire record, the Court agrees. It is undisputed that Hatem's Chapter 13 petition and schedules failed to disclose Kennedy's one-half ownership interest in the subject property. (Bankruptcy pleadings, Doc. 1). It is undisputed that Hatem erroneously (if not falsely) reported that Kennedy had a secured lien on the property in the amount of $210,000.00, making Hatem's secured claims on the property, and her liabilities in general, appear much greater than they were.[3] (*Id.*).

It is undisputed that Hatem listed the value of her interest in the property as $205,000.00, which, in conjunction with her failure to list Kennedy as a one-half owner, made it appear that she was the sole owner of property whose value was only $205,000.00. This omission, in conjunction with the misstatement that Kennedy had a lien on the property of $210,000.00, made it appear that property worth only $205,000.00 was subject to secured debt of $264,623.00 (made up of Kennedy's purported lien and the Regions' mortgage). (Bankruptcy pleadings, Doc. 1). In fact, the property was worth $410,000.00 and was subject to secured debt of only $54,623.00.

At the confirmation hearing on January 4, 2001, Hatem and her attorney acknowledged that the information given in the petition was erroneous in many respects. (R. 18–24; 46–50). The bankruptcy court noted that, although objections had been filed to the petition and plan on December 13, 2000, neither Hatem nor her attorney

---

**3.** Deducting the nonexistent $210,000.00 lien supposedly held by Kennedy, Hatem's liabilities totaled only $106,875.00, as opposed to $316,875 reported by Hatem. (Bankruptcy pleadings, Doc. 1).

had made any attempt to correct or amend the misrepresentations and omissions therein. (R. 50). In fact, they continued to seek to have the defective plan confirmed at the hearing. (R. 50).

In addition, as the bankruptcy court found, the timing of the filing of Hatem's Chapter 13 proceeding clearly indicated that her motive was to attempt to defeat the state court ordered sale of the property. If there were any doubt about that motive, Hatem erased it when she candidly admitted in her brief to this Court that she filed her Chapter 13 case in part "to forestall a sacrificial forced sale of her one-half undivided [interest] in the real estate in which she resides." (Doc. 2 at 2).

The Court further notes that Hatem's assets, including her personal property, totaled $215,403.00, and her liabilities (once the erroneous $210,000.00 lien was removed) totaled only $106,875.00. (Bankruptcy pleadings, Doc. 1). As the bankruptcy court found, had the state court ordered sale of the property proceeded, it would likely have generated $205,000.00 for Hatem as one-half owner of the property, which would have been more than sufficient to pay all of her creditors in full. Despite that fact, Hatem filed a Chapter 13 plan in which she proposed to pay nothing of the $51,243.00 owed to her unsecured creditors.

Finally, Hatem claims in her brief that the bankruptcy court refused to allow her to amend her plan. To the contrary, Hatem never attempted to amend her plan until the date of the hearing on her original plan when, from the witness stand, she proposed to obtain a mortgage on the property, buy out her mother's interest, pay off all of her debts, and then pay the monthly note on the mortgage. (R. 13–17, 63–64). However, she admitted that she had done nothing to secure such a loan. (R. 13–15). The court considered Hatem's new plan and found it unfeasible given Hatem's reported monthly income of only approximately $1,500.00 and the projected monthly mortgage obligation on a loan of at least $300,000.00. (R. 64). The bankruptcy court did not refuse to allow Hatem to amend her plan. It simply refused to confirm an unworkable plan, which it found to have been submitted in bad faith as a last ditch effort to avoid dismissal of a petition that had been filed in bad faith. (R. 64).

Considering the totality of the circumstances in this case, particularly Hatem's motivations in seeking Chapter 13 relief, her ability to pay her debts in full, her lack of effort in putting forth a proper and feasible plan, the insubstantiality of the repayment to her unsecured creditors, the degree of inaccuracy of the plan's statements of assets and debts, and the misleading nature of those inaccuracies, this Court cannot say that the bankruptcy court was clearly erroneous in its finding that Hatem filed her Chapter 13 petition and her Chapter 13 plan in bad faith.[4] Moreover, for these same reasons and for the additional reason that Hatem completely failed to show the feasibility of her purported amended plan (R. 13–17, 34–37, 46–48), the bankruptcy court did not err in denying its confirmation as well. *United States v. Devall,* 704 F.2d 1513, 1517 (11th Cir.1983) (the court will not approve a plan unless it has first ascertained that the plan is feasible).

Where a bankruptcy court has properly found that a Chapter 13 petition

---

4. The good faith requirement for filing a Chapter 13 petition is measured by the same standard for determining good faith in filing a plan under § 1325(a)(3). *In re Green,* 214 B.R. 503, 506 n. 9 (Bankr.N.D.Ala.1997).

and plan were filed in bad faith, confirmation of the plan may be denied, and the case may be dismissed. *See* 11 U.S.C. § 1307(c)(5); *Green*, 214 B.R. at 506 n. 9 ("[b]ankruptcy courts have a duty to preserve the bankruptcy process for its intended purpose and may dismiss a Chapter 13 case which is filed in bad faith.") (citing *Shell Oil v. Waldron*, 785 F.2d 936, 941 (11th Cir.1986)); *In re Steele*, 34 B.R. 172, 173 (Bankr.M.D.Ala.1983) ("[w]here the court finds that a petition and plan are not filed in good faith, confirmation may be denied and the case dismissed....."). As such, the bankruptcy court properly denied confirmation of the present Chapter 13 plan and properly dismissed the Chapter 13 petition, and that judgment is due to be **AFFIRMED**.

### VI. CONCLUSION

After reviewing the record, the Court is persuaded that the bankruptcy court's finding that Hatem's petition and plan, as well as her amended plan, were filed in bad faith is not clearly erroneous, and, therefore, confirmation of the Chapter 13 plans was due to be denied and the Chapter 13 petition was due to be dismissed. In accordance with the memorandum opinion entered by the Court this day, it is hereby **ORDERED** that the judgment of the bankruptcy court denying confirmation of the debtor's Chapter 13 bankruptcy plan and dismissing debtor's Chapter 13 case with a 180–day injunction from filing for relief under any chapter of the Bankruptcy Code is due to be and is **AFFIRMED**. A separate Order will be entered in accordance herewith.